May Term, 1846.

THE RICH-
MOND TR. AND
MAN. CO.
v.
FARQUAR.

---

THE RICHMOND TRADING AND MANUFACTURING COMPANY *v.*
FARQUAR.

8b  89
163  648

An ambiguity arising from the phraseology of written evidence—not from extrinsic matter—cannot be explained by parol evidence.

A power given by a seller of certain sacks of wool to a third person to weigh the same and deliver them to the buyer, does not authorize the agent to make any warranty, on the part of the seller, as to the quality of the wool.

And such agent's report to the seller of his having attended to the weighing and

May Term,
1846.

THE RICH-
MOND TR. AND
MAN. CO.
v.
FARQUAR.

delivery of the wool is no proof of the seller's ratification of a warranty of which he was uninformed.

The construction of a written document is for the Court and not for the jury.

If wool sold in sacks be marked on the sacks and described in the invoice, by the authority of the seller, as being of a certain quality, there is a warranty by the seller that the wool is of that quality.

Special plea to three of the four counts in a declaration, and a replication to the plea. General issue to the whole. *Held*, that the action was not discontinued.

*Wednesday,*
*June 3.*

ERROR to the *Wayne* Circuit Court.

DEWEY, J.—This was an action of assumpsit by *Farquar* against ·the *Richmond Trading and Manufacturing Company.* The declaration contains four counts; the first three are on warranties of a quantity of wool in sacks, sold by the defendants to the plaintiff, each count varying the form of the warranty. The fourth count is *indebitatus assumpsit* for goods sold, money had and received, &c. Pleas, first, the general issue to the whole declaration; secondly, to the first three counts, that the promises therein alleged were obtained by fraud, covin, and deceit. There was also another plea, which was correctly overruled on special demurrer as amounting to the general issue. The plaintiff replied to the second plea denying the fraud, &c., on which there was an issue. Verdict and judgment for the plaintiff.

On the trial, the plaintiff proved the following entry on the corporate book of the defendants, containing the proceedings of the board of directors at a regular meeting thereof, viz., " Upon the subject of wool, *J. H. Farquar* proposed that he would take the lot of wool now sacked, at a price to be agreed upon by the foreman of the factory, *Thomas J. Wallace,* he to form his judgment from the best lights he can obtain of the prices ranging in the eastern markets, all drawbacks, &c., considered. And said *Farquar* will in payment of the same, &c. (setting out the terms and manner of the payment); all of which was assented to unanimously. And *Thomas Newman* and *William Cox* were appointed to inform said foreman of the agreement, and to attend to the weighing and delivery of the same (the wool), and to report to the next meeting." The plaintiff then produced a witness, (one *Haines* who had acted in behalf of the plaintiff in making the above proposition to purchase the wool, and who was the

secretary of the defendants,) and asked him what was his
understanding of the meaning of the above document? The
defendants objected to the witness answering, but the objec-
tion was overruled, and the witness stated that the agree-
ment of the parties was that *Wallace* should set the price,
but not judge of the quality of the wool.

The admission of this testimony was erroneous. If there
is any ambiguity in the entry upon the defendants' book, it is
in the phraseology, and arises from no extrinsic matter, and
was not therefore susceptible of explanation by parol.

The defendants asked the Court to instruct the jury, that
the above entry did not authorize *Thomas Newman* and *William Cox* jointly, or the latter solely, to make any warranty
in behalf of the defendants of the quality of the wool; that
if *Cox* reported to the defendants that he had attended to the
weighing and delivery of the wool, it afforded no evidence
that they ratified a warranty by him of the wool, unless they
were apprized that he had warranted it. There was evidence to which this latter instruction was relevant. The
Court refused the instructions.

There was error in not making both these charges. The
first should have been given, because it is most apparent that
there is nothing contained in the entry alluded to, authorizing *Newman* and *Cox*, or either of them, to bind the defendants by a warranty of the quality of the wool. Their authority was to attend to the weighing and delivery of the wool.
This was a special power and could not be exceeded to the
injury of the defendants. As to the other instruction, it is
hardly necessary to remark, that the mere report of *Cox* that
he had attended to the weighing and delivery of the wool,
did not prove that the defendants had ratified any thing; nor
would their *acquiescence* in the report have afforded any evidence that they ratified a warranty of which they knew
nothing.

The Court instructed the jury in substance as follows:
That if they believed *Wallace* was simply to ascertain and
say what were the eastern prices of wool, without reference
to the quality of the wool in question, and if at the time of
the sale and delivery of that wool, he, acting solely as the
agent of the defendants, directed the bales to be marked as

containing wool of a designated quality, and the wool was invoiced by the defendants to the plaintiff as being of that quality, the marking of the sacks and the description in the invoice amounted to a warranty that the wool was of the quality indicated by the marks and the invoice; but if the jury believed that the agreement was that *Wallace*, as the mutual agent of both parties, should judge of the quality of the wool as well as set the price, and that he did in that capacity determine the quality and price of the wool, which quality was accordingly marked on the bales and inserted in the invoice, these facts did not amount to a warranty as to the quality of the wool by the defendants.

This charge so far as it referred to the jury the construction of the entry upon the book of the corporation was erroneous. That entry being a written document, its construction belonged to the Court and not to the jury. *Harris* v. *Doe*, 4 Blackf. 369. And as it went to the jury under an improper parol explanation, it was very liable to a misconstruction by them. The doctrine contained in the charge, that the marks on the bales, and the description in the invoice, indicating the quality of the wool, might amount to a warranty by the seller that the wool was of the quality thus indicated, was correct. 3 Rawle, 37.—2 Harr. & Gill, 495. See, also, *Gray* v. *Cox*, 4 B. & C. 108, by *Abbott*, C. J., *Jones* v. *Bright*, 5 Bingh. 533, by *Best*, C. J. The entry in the corporate book, specifying the power of *Wallace*, not only authorized but required him, in settling the price of the wool, to have reference to its quality, for without such reference, it was impossible for him to judge of its value; and this authority was mutually conferred by both parties to the contract. But it is hardly to be supposed that he was expected to ascertain the quality of the wool by actual inspection after it was sacked. As, however, he was the foreman of the factory, he might have been acquainted with the quality of the wool before it was put in sacks; if such was the fact, and in determining the price of the article, and in causing its quality to be marked and invoiced, he was governed by his personal knowledge, no warranty can be inferred against the defendants, although he was mistaken as to the quality of the goods. But if, on the contrary, in performing those acts he was influ-

enced by the representation of the defendants or their agent, as to the quality of the wool, there was a warranty by the defendants that the wool was of the quality thus indicated; and of these matters the jury were the proper judges.

It is contended by the plaintiffs in error that there was a discontinuance of the action, because the second plea was only to three of the counts and the plaintiff did not pray judgment as to the fourth count. But this is a mistake. The general issue was in to the whole declaration. The plaintiff could not, therefore, take judgment by *nil dicit* as to any portion of the action. There could be no discontinuance so long as the whole declaration was answered by the general issue, although another plea might answer but a part. 1 Saund. 28, n.—*Clarkson* v. *Lawson*, 6 Bingh. 587, by *Bosanquet*, J. (1).

PERKINS, J., having been concerned as counsel, was absent.

*Per Curiam.*—The judgment is reversed with costs. Cause remanded, &c.

*J. S. Newman*, for the plaintiffs.

*C. H. Test* and *S. W. Parker*, for the defendant.

(1) A leading case as to this kind of *discontinuance* is *Herlakenden's*, 4 Coke, 62. That case was disputed by C. J. *Willes* in *Bullythorpe* v. *Turner*, Willes, 475, but it is sustained by many authorities. See 1 Saund. 28, notes. Mr. *Stephen* thus explains the doctrine : "In an action of trespass for breaking a close, and cutting down 300 trees, if the defendant pleads as to cutting down all but 200 trees some matter of justification or title, and as to the 200 trees says nothing, the plaintiff is entitled to sign judgment as by *nil dicit* against him in respect of the 200 trees, and to demur or reply to the plea as to the remainder of the trespasses. In such cases, the plaintiff should take care to avail himself of his advantage in this (which is the only proper) course. For if he demurs or replies to the plea, without signing judgment for the part not answered, the whole action is said to be *discontinued*. The principle of this is, that the plaintiff, by not taking judgment as he was entitled to do for the part unanswered, does not follow up his entire demand; and there is consequently that sort of chasm or interruption in the proceedings, which is called in technical phrase a *discontinuance*." Stephen on Pl. 216. This rule does not apply where a plea answering but a part, professes to answer the whole, for there the plaintiff should demur; nor where the unanswered part is immaterial; nor where, as in the text, there is another plea to the whole. Saund. and Steph. *supra*.—4 Co. *supra*, T. & F.'s ed. notes. But such *discontinuance*, when it occurs, is cured by the statute of jeofails. Steph. *sup.* note. R. S. *Ind.* 1843, p. 714.