NATHAN P. RYERSON *vs.* ROBERT A. CHAPMAN.

Oxford, 1875.—April 4, 1877.

*Damages.*

A grantee in a deed of general warranty, who became seized in fact of the estate granted, and was afterwards evicted by one having the superior title, is entitled in an action on the covenants to recover of the grantor the amount of all judgments obtained against himself by the party dispossessing him, after paid by him, together with all reasonable expenses attending the litigations, whether the recovery resulted from actions of trespass brought against him, or by him, if affecting the title of the estate; and if the grantee in prosecuting and defending the suits, exercised a due degree of caution and care, notwithstanding the grantor had no notice of the pendency of the prior suits.

But in case the grantor is not notified to appear in the actions, the burden will be upon the grantee to show the superior title of the recovering party, and that the actions against himself were reasonably defended, and the costs therein fairly incurred.

And as to the costs in cases in which the grantee was plaintiff, instead of defendant, and also as respects counsel fees and expenses in cases where he was either plaintiff or defendant, and whether the grantee was notified or not, from the nature of the facts, the burden will be on the grantee to show such items to be reasonable and proper claims, if the grantor did not appear and take upon himself the management of the suits.

ON REPORT to the full court, to settle law and fact on so much of the evidence as legally admissible.

The defendant and his brother, since deceased, were copartners in business in 1849, attached the real estate of one John Frost,

extended their execution thereon, December 21, 1849, and in consideration of $35, deeded the same by warranty, December 29, 1851, to the plaintiff, who continued in peaceable and undisturbed possession up to June, 1868, when one John E. Carleton claimed to own the premises under deeds from Frost to one Smith, and from Smith to him. The plaintiff brought an action of trespass *quare clausum fregit* against Carleton; other suits followed between Carleton and Ryerson, and those claiming under them, until some nine suits were pending, one of which, *Carleton* v. *Ryerson*, is reported, 59 Maine, 438, where the court decided the levy was not valid. Thereupon judgment followed against Ryerson in that suit and the remaining eight suits, the amounts of which he paid. He then called upon this defendant, Chapman, to make good his covenant, and according to the then understanding of some of the parties and counsel as to the law, Chapman paid to Ryerson the amount of the judgment and counsel fees in the reported case and took a receipt signed by Ryerson's then attorney, which in its terms "exonerated and relieved said Chapman on any other suits already brought against said Ryerson by said Carleton, or by said Ryerson against said Carleton."

The defendant afterwards paid the plaintiff the value of the land awarded by referees, $125, and costs $15. After which the plaintiff brought this action claiming to recover the amounts paid on the other judgments of Carleton against him, $162.67, of Hastings against him, $46.46, and of Carleton against two other defendants, G. W. and C. E. Ryerson, justifying under him, $214.06, with counsel fees $178; in all, $601.19.

*S. F. Gibson & C. E. Holt,* for the plaintiff, cited and relied upon *Merritt* v. *Morse,* 108 Mass. 270.

*E. Foster, jr., & C. H. Hersey,* for the defendant, contended, as to the facts, that the evidence did not prove actual seizin in the Chapmans, at the date of their deed to the plaintiff; it did not sufficiently appear by competent evidence that in any of the suits excepting the one carried to the law court, that the title to the premises was in controversy; it did not appear in any of the suits between third parties that any of them were the servants of the

plaintiff; and that the evidence of payment and the receipt sus-
tained the plea of accord and satisfaction.

Upon the hypothesis of facts as found by the court, they con-
tended that in an action for a breach of covenant of general war-
ranty by the grantee, where he was seized in fact, and has been
evicted by judgment of law, the measure of damages is limited to
the value of the land, and the expenses of the single suit settling
the title, and cited authorities. *Swett* v. *Patrick*, 12 Maine, 9.
4 Kent's Com. 475. 3 Wash. Real Prop., c. 5, § 5. *Hardy* v.
*Nelson*, 27 Maine, 525, 530. *Gore* v. *Brazier*, 3 Mass. 523, 544.
*Sumner* v. *Williams*, 8 Mass. 162, 222. Sedgwick on Dam.
168. *Pitcher* v. *Livingston*, 4 Johns. 1. *Straats* v. *Ten Eyck*,
3 Cai. (N. Y.) 111. *Bennet* v. *Jenkins*, 13 Johns. 50, 51. *Smith*
v. *Sprague*, 40 Vt. 43, 46. *Pitkin* v. *Leavitt*, 13 Vt. 379.

PETERS, J. The evidence in this case is meagre. Aided by
the briefs of counsel, we understand the facts, among other things,
to show as follows : The defendant, getting a supposed title to a
parcel of land by levy, conveyed the land to the plaintiff by a
warrantee deed. The plaintiff had been in an undisturbed occu-
pation of the land under his deed for about fifteen years, when his
possession was invaded by one Carleton, who claimed title to the
land upon the ground that the levy under which the defendant
acquired the land, was defective and void. The plaintiff sued
Carleton, and Carleton sued the plaintiff, in actions of trespass,
and several other suits followed between them. While all the
suits were pending, one of them was carried up to decide the ques-
tion of title to the land, and Carleton prevailed, as will be seen in
*Carleton* v. *Ryerson*, 59 Maine, 438. After this, the defendant
paid to the plaintiff all the costs and counsel fees incurred in the
defense of that action, and also paid him the value of the land
from which he was evicted, but refuses to pay the damages, costs,
and expenses incurred in the other actions. Several actions were
brought against the plaintiff, and there were two in his favor.
Several questions of law and fact are referred to us and we have,
by agreement, jury powers to aid us in deciding them.

First : The defendant asserts that there is no evidence that the
plaintiff received from the defendant any seizin of the land in law

or fact, and that therefore the plaintiff cannot recover, having already received more than the amount of the consideration paid therefor, with interest on the same. But we think the legitimate inference from the evidence is, that a seizin in fact was obtained. The parties have proceeded in the case upon that assumption, and the defendant claims that he has already settled all the damages on that basis.

Then, the defendant contends, that it is not shown that the judgments recovered against persons of the name of Ryerson, other than the plaintiff, arose out of suits instituted against them as the servants of the plaintiff, or that the suits were defended in vindication of the plaintiff's title to the land, or that the plaintiff had paid the judgments. But we think that these facts, though not clearly stated, are fairly inferable upon an examination of all the evidence in the case.

This brings us to the principal question of law in the case, which is, whether the plaintiff is entitled to recover, under the warranty of title, any more of the costs and expenses of litigation paid by him than what grew out of a single suit. The defendant maintains that he cannot recover more, upon the supposition that one litigation was sufficient to settle the question of title. It is our judgment that the plaintiff can recover more than the expenses of litigating one suit.

This question is pretty well solved by a reference to the nature of the covenant of warranty. The American form (in most deeds) is a brief one, but much more than is expressed therein is technically implied. It is the "sweeping" covenant in this country, and practically includes what is embraced in the covenant for quiet enjoyment generally found in English conveyances. The words of the latter covenant when set forth at length, (some short form is generally used) are these: "It shall be lawful for the said grantee, his heirs and assigns, from time to time, and all times hereafter, peaceably and quietly to enter upon, have, hold, occupy, possess and enjoy the said lands and premises hereby conveyed or intended so to be, with their, and every of their appurtenances, and to have, receive, and take the rents, issues, and profits thereof, to and for his and their use and benefit, without any let, suit,

trouble, denial, eviction, interruption, claim, or demand whatsoever, of, from or by him, the said grantor, or his heirs, or any person or persons whomsoever." Rawle on Cov. 182. This covers extensive ground. In *Howell* v. *Richards*, 11 East. 633, 642, Lord Ellenborough, C. J., says: "The covenant for quiet enjoyment is an assurance against the consequences of a defective title, and of any disturbances thereupon. For the purpose of this covenant, and the indemnity it affords, it is immaterial in what respects, and by what means, or by whose acts, the eviction of the grantee or his heir takes place ; if he be lawfully evicted, the grantor, by such his covenant, stipulates to indemnify him at all events."

The covenant of warranty amounts to an agreement of indemnity. The foundation of a claim for damages under it, must be that an eviction, or something equivalent thereto, has properly taken place. The covenantee, who has been evicted, is entitled to have repaid to him all reasonable outlay which he in good faith expends for the assertion or defense of the title warranted to him. Weston, C. J., says: (*Swett* v. *Patrick*, 12 Maine, 9, 10,) "He (covenantee) was justified in making every fair effort to retain the land." If he is assaulted with ever so many suits, he must defend them, unless it is clear that a defense would avail nothing. If he defends but one, and lets the others go by default, he might get himself into inextricable trouble. It is as essential that he should defend all the suits as any one of them. A defender of a walled city might as well plant all his means of defense at a single gate, and leave all the others undefended, to be entered by the enemy.

The covenantee becomes the agent of the covenantor, in making a defense against suits. He should do for his warrantor what the warrantor should do for himself, if in possession. It is no more expensive for the warrantor to defend suits brought against his agent, than suits against himself, and the presumption is, that he would have been a party to the same litigations, had he remained in possession. But the agent must act cautiously and reasonably. He has no right to "inflame his own account" (11 A. & E. 28,) nor indulge in merely quarrelsome cases.

It follows, therefore, that the plaintiff may recover for the dam-

ages and costs and expenses of suits brought against him, and also for the costs and expenses of suits brought by him, affecting the title to the estate. Each suit may have been a part of the means by which the title was sought to be defended. The case in 108 Mass. 270, (*Merritt* v. *Morse,*) cited by the plaintiff, seems quite identical with this case. We have carefully considered the able argument of the counsel for the defendant, but cannot concur in it. The cases cited by him upon this point, do not go far enough to sustain his position. The language used in them is appropriate enough to the idea of one suit only being necessary to settle a question of title, but in such cases the damages and costs of one suit only were involved. · None of them decide, or undertake to decide, the question presented here.

The defendant contends that he is not liable for the costs and counsel fees in some of the actions, of the pendency of which he was not notified. But notice was not necessary to put upon him such a liability. Without a notice, the plaintiff can recover his damages caused by the failure of the title warranted to him. And, in this state, the costs of the former action and the expenses of counsel fees attending it, whether in asserting or defending the title, are a portion of the damages recoverable. The want of notice of a suit to the warrantor, undoubtedly increases the burden of proof that falls on the warrantee. In such case he would be held to prove that the actions brought against him were reasonably defended, and that the costs were fairly and necessarily incurred. And as to the costs in cases in which the warrantee was plaintiff instead of defendant, and also as respects counsel fees and expenses in cases where he was either plaintiff or defendant, and whether the covenantor was notified or not, from the nature of things, the burden is on the covenantee to show such items to be reasonable and proper claims, where the grantor does not appear in the suits. The case of *Swett* v. *Patrick*, 12 Maine, 9, does not decide that such items are not recoverable where no notice was given, but gives the fact of notice as an additional or conclusive reason why they should be included in the damages. We are aware that it is maintained in many cases that a judgment against a warrantee is *prima facie* evidence of both eviction and

the infirmity of the title, even though the warrantor had no notice of the former litigation, in a suit by the warrantee against the warrantor upon the covenants in the deed. But we think the law has never been so regarded in this state. Such judgment "is legally admissible to prove the act of eviction, but not the superior title of the recovering party." *Hardy* v. *Nelson*, 27 Maine, 525, 530. If the grantor has notice of the former suit and an opportunity to defend, then, in the absence of fraud or collusion, the judgment in the former suit is conclusive against him. But we do not think it reasonable that a grantor should be required to prove that a judgment was wrongfully recovered against his grantee, when he had no notice to be heard. *Veazie* v. *Penobscot Railroad*, 49 Maine, 119. *Thurston* v. *Spratt*, 52 Maine, 202. *Coolidge* v. *Brigham*, 5 Met. 68. *Chamberlain* v. *Preble*, 11 Allen, 370. Rawle on Cov. 122 *et seq. Smith* v. *Compton*, 3 B. & Ad. 407.

The defendant's next point of defense is, that the claims now sued for have been settled by an accord and satisfaction, evidenced by a receipt which is a part of the case. We think this point in the defense fails also. This part of the controversy grows out of a misapprehension of the law by some of the parties concerned, all of whom were acting honorably. The then plaintiff's counsel supposed that what he got from the defendant was all that the plaintiff was legally entitled to receive, writing the receipt accordingly. But we think the learned counsel was in error in that respect. The receipt was not apparently given in compromise of any disputed or doubtful claim, but was intended as an admission of the sum received, and of the purpose for which it was received, and to exclude the presumption that it was given for anything else. There was no consideration for a discharge by the plaintiff of his present claim. The receipt is worded upon the mistaken idea that there was no legal claim.

Upon the question of damages, our decision must necessarily be somewhat of an arbitrary character. The case, in some of its aspects, is a blind one. The evidence is uncertain and doubtful upon some points, and lacks completeness. It does not appear whether there was any necessity for, or wisdom in bringing the

suit of replevin by the plaintiff, nor whether the suit in which the plaintiff recovered nominal damages concerned this title or not. All the costs look large. There was carelessness and folly somewhere, in carrying on so many suits. The burden is upon the plaintiff. He claims $600 and more, damages. He may have judgment for $400, and interest thereon from the date of writ.

APPLETON, C. J., WALTON, BARROWS, DANFORTH and VIRGIN, JJ., concurred.