BAGLEY and others *v.* CLEVELAND ROLLING MILL Co.

*(Circuit Court, N. D. New York.* July 26, 1884.)

1. SETTING ASIDE A VERDICT—CAUSE—TEST.
    If the evidence introduced during the trial of a case was such that it would have been the duty of the court to set aside a verdict in favor of a defendant as contrary to the evidence, if such verdict had been rendered by the jury, then it was the duty of the judge to direct a verdict for the plaintiffs.
2. SALE—WARRANTY—EXPRESS AND IMPLIED—RIGHT OF ACTION.
    The rights and remedies of a purchaser are not affected by the question whether a cause of action arises out of a breach of a contract by the vendor to deliver an article of a specified quality, or out of a breach of a representation which is collateral to the contract, or out of such a breach when the representation or warranty is implied instead of being express.
3. SAME—LIABILITY—DUTY OF VENDEE.
    A manufacturer of steel having, in obedience to several orders from a customer, furnished the latter with steel of a certain quality, if, upon receipt of a subsequent order from the same customer for the same article, he supplies an inferior quality, he is liable upon his undertaking that the steel was of the quality ordered, and such liability is not lessened by the fact that the customer did not avail himself of his opportunity to test the steel before using it.
4. SAME—QUALITY—LEGITIMATE PRESUMPTION.
    If there is a warranty of kind and quality, the purchaser has a right to assume the warranty to be true, and therefore he may sell with like warranty, and defend suits for the breach, and recover of the vendor.

At Law.

*Charles D. Wright* and *Francis Kernan,* for plaintiffs.

*Levi H. Brown* and *Beach & Cushing,* for defendant.

WALLACE, J. If the evidence introduced upon the trial of this case was such that it would have been the duty of the court to set aside a verdict in favor of the defendant as contrary to evidence, if such verdict had been rendered by the jury, then it was the duty

of the court to direct a verdict for the plaintiffs. *Randall* v. *B. & O. R. Co.* 109 U. S. 478; S. C. 3 Sup. Ct. Rep. 322; *Griggs* v. *Houston,* 104 U. S. 553; *Herbert* v. *Butler,* 97 U. S. 319.

The defendant's motion for a new trial presents the question whether the evidence was such as to require the case to be submitted to the jury according to the rule stated. The plaintiffs sued to recover damages arising from a breach of warranty on the part of the defendant. The plaintiffs were manufacturers and sellers of vises at Watertown, New York, and the defendant was a manufacturer of steel at Cleveland, Ohio. In August, 1880, the plaintiffs wrote to defendant, stating that they required steel for facing the jaws of the vises they were manufacturing, and detailing the characteristics which steel should possess for that purpose, and requesting defendant to send them a sample to test. The defendant sent them a sample. It proved unsatisfactory, and plaintiffs wrote defendant again, pointing out the defects, asking for another sample, and stating that they could give considerable and continuing orders if defendants could furnish a satisfactory article. The defendants sent other samples. Subsequently, the plaintiffs sent several orders for lots of steel, accompanied with explanatory suggestions to defendant, and defendant sent the lots ordered. The correspondence indicates that it was contemplated by both parties that plaintiffs should experiment with these lots, in order to ascertain whether the defendant could supply them with the required article. October 22, 1880, defendant wrote plaintiffs as follows:

"We have been trying to get a cast of steel out for your work, but are so busy that we can't do anything in way of experimenting, but will send same as before if desired. If you desire us to send same quality as before please reiterate your order."

October 25th plaintiffs replied to this letter as follows:

"Yours of 22d at hand. Give us same quality as last lot, and send, as soon as possible, 500 lbs. $\frac{1}{4}$x$\frac{7}{8}$, 500 lbs. $\frac{5}{8}$x1, 500 lbs. $\frac{5}{8}$x1$\frac{1}{8}$."

November 6th plaintiffs wrote defendant again as follows:

"Send us 500 lbs. steel, (same quality,) $\frac{3}{4}$x1$\frac{1}{4}$. We are in great need of all stock ordered, and if it proves satisfactory on a fair trial hope to give you much larger orders."

Neither of these orders were filled by defendant, owing to defendant's inability to do so, and November 20th defendant wrote plaintiffs explaining the causes of the delay. November 22d plaintiffs wrote defendant, referring to their former orders, and ordering two more lots of 1,000 pounds each. Soon after this all the orders were filled by the defendant, and after they were filled, and prior to March 5, 1881, plaintiffs ordered and defendant sent four or five lots of steel. March 5, 1881, plaintiffs ordered 2,000 pounds, "same quality as last ordered," which order was filled by defendant. March 30, 1881, plaintiffs ordered three tons, "same quality as last." This order was filled by defendant by a shipment of the quantity, April 30th.

All the lots sent by the defendant between November 22, 1880, and this last order, including the steel sent upon the order of March 5th, proved satisfactory to the plaintiffs, but the steel sent to fill the order of March 30th proved a failure. Its defects were discovered before it was used, and May 13th plaintiff wrote to defendant as follows:

"The steel shipped by you April 30th is a complete failure. You remember we want it for vise jaws, and require it to harden and take a temper when heated and plunged in water. What you have sent before has been good and satisfactory in this respect. We have tested some 20 or 30 pieces, and many took no temper at all, and some would harden in spots and be soft in other parts. We have tried it faithfully in every way, with no better results. Of course, we cannot think of using it, as the tempering is the last process, almost, after all the work is expended on the vises. We see no other way than for you to duplicate the order with stock that will be right, and we return this lot to you."

May 17th defendant wrote to plaintiffs:

"We have investigated the complaint contained in your letter of the 13th against the steel, and find that, through a misunderstanding here, we did not send the right thing. We have entered a new order and will push it as fast as possible. Meanwhile, please return the lot you have to us."

May 21st plaintiffs wrote defendants, stating that they had shipped the lot for return, and saying:

"We trust you will permit no delay in forwarding the duplicate order of proper quality. We are out of stock, and many of our men will be idle until it arrives."

May 24th defendant filled the order. The lot was received by plaintiffs, June 1st, and a large part of it was used for the vises. After it had been used and the vises sold, complaints were made by purchasers, and, upon investigation, it was ascertained that the vise jaws made from it were too brittle for practical use. Thereupon, tests were made of the unused steel, part of the lot in question on hand, and it was found wholly unfit. These tests were made by taking samples of the lot and heating them, and plunging them in water, when, by filing and by striking them with a hammer, it was found they had not tempered, but were brittle. Thereupon, plaintiffs promptly gave notice to the defendant, and sent to the defendant samples of the steel to test. After a long delay defendant's agent wrote to plaintiffs stating that he was satisfied that defendant could not make steel of the kind required for the plaintiff's purposes.

The damages sustained by plaintiffs in the cost of labor and the waste of material employed in the defective vises, together with interest from the commencement of the suit, were $3,000.

The court ruled, as matter of law, that there was an agreement on the part of defendant that the steel should be of the same quality as the lots that defendant sent to the plaintiffs between November 22, 1880, and the lot sent upon their order of March 30th; that there was a breach of this agreement; that the plaintiffs owed no duty to

defendant to test the steel before using it; and that there was no evidence to authorize the jury to find that the plaintiffs or those in their employ discovered the steel to be defective before the vises were finished. If these rulings were correct the motion for a new trial should be denied.

There was no conflict of testimony respecting the warranty. The plaintiffs' letter to defendant of March 5, 1881, requested the defendant to send steel of "the same quality as last ordered." The defendant sent that lot of steel. March 30th plaintiffs ordered three tons more, "same quality as last." The defendant undertook to fill that order, but failed for the reason stated in its letter to plaintiff of May 17th: "through a misunderstanding here we did not send the right thing." The defendant then made a second attempt to fill the order, and this after being advised by plaintiffs' letter of May 13th what the particular defects were, and what use the steel was required for, and that the steel sent before was satisfactory. There was, therefore, no room for any possible misconception or misunderstanding of the description and quality of the steel which the defendant was instructed to send. The question, then, is, did the transaction import an undertaking upon the part of the defendant to send plaintiffs steel of the quality theretofore sent, and found to be satisfactory?

Although the term "warranty" is used as expressing, in a general sense, the nature of the defendant's undertaking, there was no warranty in the technical sense of the term. A warranty is an undertaking which, though part of the contract of sale, is collateral to the express object of it,—a buyer has a right to expect an article answering the description in the contract; but this is not on the ground of warranty, but because the seller does not fulfill the contract by giving him something different. ABINGER, C. B., in *Chanter* v. *Hopkins*, 4 Mees. & W. 399, 404; MARTIN, B., in *Azemar* v. *Casella*, (Exch. Cham.) L. R. 2 C. P. 677, 699. Such an undertaking is usually treated as a warranty, because the description of the article is deemed a representation that it answers the description. But where there is a collateral representation the rule obtains that, in order to constitute a warranty, it must have been intended as such by the vendor, and understood as such by the vendee.

By assuming to comply with the plaintiffs' order, the defendant undertook to send steel of the same quality as that furnished upon their order of March 5th. The order of March 30th was the one which defendant assumed to fill, and called for steel of the same quality as sent in response to the order of March 5th. The letters and orders of plaintiffs, subsequently, were but reiterations of the original instruction to send steel of the same quality as sent upon the order of March 5th. There was nothing for the jury to pass upon, and the question was one purely of law, whether defendant undertook to furnish plaintiffs with steel like that sent pursuant to the

former order of March 5th. That they did so undertake is perfectly clear. The case, in its facts, is almost identical with *Gurney* v. *Atlantic & G. W. R. R.* 58 N. Y. 358. The rule that the sense in which an affirmation is intended, and whether it was understood and relied on as a warranty, are questions of fact for the jury, has no application to such a case, (*Wason* v. *Rowe*, 16 Vt. 525,) any more than to the case where an article is sold by a particular description. *Hogins* v. *Plympton*, 11 Pick. 100; *Winser* v. *Lombard*, 18 Pick. 60; *Borrekins* v. *Bevan*, 3 Rawle, 23; *Richmond Trading Co.* v. *Farquar*, 8 Blackf. 89; *Hawkins* v. *Pemberton*, 51 N. Y. 204; *Donce* v. *Dow*, 64 N. Y. 411. Where a vendor agrees to fill an order sent for an article of a particular quality, his liability is the same as when the proposition to sell an article of that description comes from him in the first instance; he is liable if the goods sent do not correspond with the description. *Dailey* v. *Green*, 3 Har. (Pa.) 118.

The evidence was so conclusive that there was a breach of the undertaking of the defendant, that the jury would not have been authorized to draw a contrary inference. If all the steel had been used there might have been a slight question whether or not some fault or error in working it had not been committed by the plaintiffs, although the testimony in their behalf was clear and uncontradicted that they used ordinary care in working it; but the tests made with the steel which had not been used, the entire absence of testimony on the part of the defendant tending to attribute the result to any other causes than the defective quality of the article, and defendant's subsequent implied admission of its defective quality, left the case of the plaintiffs free from any fair doubt.

If the plaintiffs had a right to rely upon the undertaking of the defendant that the steel was of the quality ordered, the latter certainly has no right to complain because the plaintiffs acted upon that assumption. If there is a warranty of kind or quality, the purchaser has a right to assume the warranty to be true, and therefore he may sell with like warranty, and defend suits for the breach, and recover of the vendor his special damages in consequence of doing so. *Clare* v. *Maynard*, 7 Car. & P. 741; *Cox* v. *Walker*, Id. 744; *Swett* v. *Patrick*, 12 Me. 9; *Ryerson* v. *Chapman*, 66 Me. 557; *Lewis* v. *Peake*, 7 Taunt. 153.

The testimony undoubtedly shows that up to a certain period in the dealings between the parties it was not certain that the defendant could supply plaintiffs with the desired quality of steel, and that plaintiffs were experimenting to ascertain whether the article sent would answer the purpose. But after the plaintiffs had informed defendant that certain lots had proved satisfactory, and gave an order for the same quality, the latter had no right to assume that future experiments would be made. After their letter of November 6th there was nothing on the part of the plaintiffs to indicate their intention to make experimental tests. It is true that by their letter of May 16th

the plaintiffs notified defendant that they had found the lot shipped pursuant to their order of March 30th unfit before using it, but the defendant was aware that this was not owing to any inherent difficulties in the article, but to its own fault in not sending the kind sent before, and by acknowledging its mistake plainly intimated to plaintiffs that it could supply the required article.

It is held in several cases by the courts of New York that upon an executory contract for the sale and delivery of personal property the remedy of the vendee to recover damages, on the ground that the article furnished does not correspond with the contract, does not survive the acceptance of the article by the vendee after opportunity to ascertain the defect. *Hargous* v. *Stone*, 5 N. Y. 73; *Reed* v. *Randall*, 29 N. Y. 358; *Dutchess Co.* v. *Harding*, 49 N. Y. 321.

The later cases in the same courts establish quite decided modifications of the doctrine.

In *Gaylord Manuf'g Co.* v. *Allen* the court say:

"It is not intended to express an opinion as to the rule in case there were latent defects, or those which could not be discovered at the time of the delivery or the acceptance of the article." ALLEN, J., 53 N. Y. 519.

In *Gurney* v. *Atlantic & G. W. R. Co., supra*, it is held not to apply when the defects cannot be ascertained by examination, upon receipt of the article, but only upon use.

In *Day* v. *Pool*, 52 N. Y. 416, and *Park* v. *Morris Ax & Tool Co.* 54 N. Y. 587, the court held that where there is an express warranty upon an executory contract of sale, the vendee is not bound to return, or offer to return, the article; but after acceptance, and after the discovery of its defects, may retain it and recover upon the warranty.

In the cases of *Hargous* v. *Stone* and *Reed* v. *Randall* the defects in the article accepted by the vendee were obvious upon inspection, and, if the rule is confined to such cases, it is supported by some of the earlier English decisions, and by *Sprague* v. *Blake*, 20 Wend. 61. The question is not much considered in *Hargous* v. *Stone*, but in *Reed* v. *Randall* the authorities are considered, and the cases of *Fisher* v. *Samuda*, 1 Camp. 190; *Grimaldi* v. *White*, 4 Esp. 95; *Milner* v. *Tucker*, 1 Car. & P. 15; and *Sprague* v. *Blake, supra*, are cited as holding that the remedy of the vendee does not survive the acceptance of the article, after opportunity to ascertain the defect. The English cases were similar in their facts to *Sprague* v. *Blake*,—cases where the defects were obvious upon inspection of the article accepted. Some of the early English cases hold that the rule does not obtain where there is an express warranty; but Lord ELLENBOROUGH did not make such a distinction, and applied it to such a case in *Hopkins* v. *Appleby*, 1 Starkie, 477. Modern text writers of high authority do not adopt the unqualified proposition that the cause of action does not survive an acceptance, after knowledge that the article is not in compliance with the condition of sale, but state that the silence of the vendee, after acceptance with knowledge of the breach of the contract, may

be interpreted as a waiver of a right to complain, and may afford a presumption that the article was satisfactory. Story, Sales, § 405; Benj. Sales, §§ 825, 829.

The law was stated by COMSTOCK, J., in *Muller* v. *Eno,* 14 N. Y. 597, as follows:

"The omission of the purchaser to give notice or to make complaint, and the manner in which he deals with the goods, may furnish strong presumption against him upon the question whether the warranty is in fact broken, and in regard to the amount of injury he has sustained. But this is a very different thing from saying that the law absolutely deprives him of relief."

Undoubtedly, acceptance after knowledge precludes the vendee from exercising the right to rescind the sale, and the cases of *Day* v. *Pool* and *Park* v. *Morris Ax & Tool Co.* place the rule upon its correct foundation in this respect.

Manifestly, there is no distinction in principle, as to the rights and remedies of a purchaser, between a cause of action arising out of a breach of contract by the vendor to deliver an article of a specified quality or description, or out of the breach of a representation which is collateral to the contract, or out of such a breach when the representation or warranty is implied instead of being express. In either case there is an agreement, in substance and purport, to the same effect; in either, a breach of it works the same injury to the vendee; and in either, the same presumption of fact arises from an acceptance of the article after discovery of its defects. Whether the cause of action is for a breach of a contract or for the breach of a warranty is a mere matter of nomenclature, (*Hastings* v. *Lovering,* 2 Pick. 214;) and the breach of a promise implied by the law works the same consequences, imposes the same obligations, and creates the same rights, as the breach of an express promise. The language of the court in *Woolcott* v. *Mount,* 36 N. J. 262, is apposite, and is accepted as a sensible and satisfactory exposition of the law, and is as follows:

"The obligation rests upon the contract. Substantially the description is warranted. It will comport with sound legal principles to treat such engagements as conditions in order to afford the purchaser a more enlarged remedy by rescission than he would have on a simple warranty; but when his situation has been changed, and the remedy by repudiation has become impossible, no reason supported by authority can be adduced why he should not have upon his contract such redress as is practicable under the circumstances. In that situation of affairs the only available means of redress is by an action for damages. Whether the action shall be technically considered an action on a warranty, or an action for the non-performance of a contract, is entirely immaterial."

The defective quality of the steel received by the plaintiffs was not obvious upon inspection, and as the fault was a latent one, their acceptance and use of it is not material, either upon the theory that their cause of action did not survive the acceptance, or that their conduct starts the presumption that it was a satisfactory article. Undoubtedly, the plaintiffs could have discovered the latent defects in the steel here if they had made a thorough test by heating and plung-

ing it. The question, however, is not what they could have discovered, but what they did discover, and upon that question the testimony is decisive. Acting upon the assumption that the defendant had sent them the article ordered, there was probably a relaxation of their usual vigilance in testing its quality, but not a *scintilla* of evidence to show or raise the inference that they were aware of its defects until after it had been used, and the vises in which it had been used had been sold in the market.

The damages sustained by the plaintiffs were such as it was reasonably to be anticipated by the parties would accrue, in view of the special use to which the plaintiffs were to apply the steel if it proved to be unfit for the purpose. They ensued as the natural and ordinary consequence of the use of the steel in the manner contemplated by both parties. Upon the authority of many analogous cases the plaintiffs were entitled to recover to the whole extent of their actual loss. *Hadley* v. *Baxendale,* 23 L. J. Exch. 179; *Smeed* v. *Ford,* 102 E. C. L. 612; *Passinger* v. *Thorburn,* 34 N. Y. 634; *Flick* v. *Wetherbee,* 20 Wis. 392; *Van Wyck* v. *Allen,* 69 N. Y. 62; *White* v. *Miller,* 71 N. Y. 118.

It is undeniably true that when a party who is entitled to the benefit of a contract can save himself from a serious loss arising from a breach of it by reasonable exertions, he will not be permitted to charge the delinquent with damages which arise in consequence of his own inactivity. *Warren* v. *Stoddart,* 105 U. S. 229. Good faith and good logic require that he be confined to a recovery of those damages only that arise from the default of the other party. If the plaintiffs here had had any just reason to suppose that the steel they were about to use was unfit for the purpose, they would not be permitted to shut their eyes to the probable consequences, and when they proved disastrous to fall back upon the defendant for indemnity. But they are not to be deprived of compensation to the extent of their loss upon the theory that they owed any active duty of investigation and experiment to the defendant. They had a right to assume that the steel sent them was what the defendant undertook to send them, and no implication of negligence on their part can be indulged, in the absence of testimony to indicate that its unfitness was observed before it was used. None was offered, and the case rested on the uncontradicted testimony of the employes of the plaintiffs, all of whom testified that no defects were noticed during the process of using the steel.

Upon the whole case the conclusion is reached unhesitatingly that the defendant cannot fairly complain of the rulings at the trial. There were do disputed facts, and no disputable inferences from the facts shown upon which a verdict for the defendant, or a recovery of a less amount of damages, would have been warranted; and it would have been the duty of the court to set aside such a verdict if it had been found by the jury.

The motion for a new trial is denied.