BUNCH v. WEIL.

Opinion delivered April 9, 1904.

72   343
73   472
77   525
77   549

1. SALE—WARRANTY.—Where plaintiffs ordered a quantity of flour of a certain grade, and defendant accepted the order, he impliedly warranted the flour to be of the quality ordered. (Page 346.)

2. BREACH OF WARRANTY—RESCISSION.—Where plaintiffs ordered of defendant flour of a certain grade, and, after selling a portion of it, discovered that it was of an inferior grade, which could not be sold except for a price far below that for which it was bought, they may tender the goods left on hand and recover the price paid therefor. (Page 348.)

Appeal from Pulaski Circuit Court.

JOSEPH W. MARTIN, Judge.

Action by Weil Bros. & Bauer against T. H. Bunch. Judgment for plaintiffs, from which defendant has appealed. Affirmed.

*Morris M. Cohn,* for appellant.

A mere representation of a chattel sold is not a warranty. 45 Ark. 284; 14 Ark. 21. One who professes to be an agent cannot, by any statement made unknown to the principal, establish the fact of the agency. 46 Ark. 222; 29 Ark. 512; 24 Ark. 12; Mechem, Agency, § 100. The court erred in permitting letters pertaining to other transactions to go before the jury. 58 Ark. 125; 59 Ark. 105; 34 Am. Dec. 554; 30 Ia. 455; 32 Mich. 204; 4 Col. 270; 38 Cal. 171; 39 Ark. 273. The plaintiffs had no right to rescind the contract. 38 Ark. 351; 1 Benj. Sales, § § 675, 676, 623. In a sale of goods by sample the vendor warrants the quality of the goods to be equal to the sample. 2 Benj. Sales, § 969.

*John M. Moore* and *W. B. Smith,* for appellees.

Where goods are ordered for a particular purpose known to the seller, the latter impliedly undertakes that they shall be reasonably fit for the use for which they were intended. Benj. Sales, § § 851, 852, 871; 4 Camp. 144; 120 U. S. 630; 110 U. S. 108; 57 Fed. 454; 56 Am. Rep. 570; 9 Wend. 20; 21 Ia. 508; 18 Am. Dec. 323; 122 Pa. St. 7. If the article selected and forwarded is not the kind ordered, or is not merchantable in quality, the buyer may refuse to accept it, and give notice to the seller. 24 Wis. 640; 42 Wis. 626; 18 Ill. 420; 14 L. R. A. 157; 155 Mass. 60; 10 Am. & Eng. Enc. Law, 91; Story, Sales, § 359; 1 Pars. Contracts, 602, 625, 626; 48 Ark. 330; 53 Ark. 160. It was competent for the plaintiffs to notify the agent of appellant of the unfitness of the flour, and demand that the purchase price be returned. 1 Benj. Sales, § § 893-4; 1 Pars. Cont. 636, 637; 38 Ark. 342.

*Morris M. Cohn,* for appellant in reply.

Weil had no authority to bind appellant by anything he did before or after the sale. Mechem, Agency, § 950; 46 Ark. 210.

BUNN, C. J. The appellees, a company of general merchants, doing business in the city of Alexandria, in the state of Louisiana, brought this action in the second division of the Pulaski circuit court, on the 11th day of June, 1899, against T. H. Bunch, a wholesale dealer doing business in the city of Little Rock, Ark., to rescind the sale of 129 barrels of flour, and for the invoice price thereof which had been paid the defendant by plaintiffs, said invoice price being the sum of $709.50, or $5.50 per barrel; and also the difference between said invoice price of forty-one other barrels of same flour, which plaintiffs had been enabled to sell at a reduced price. This latter item of the claim was waived before the determination of the suit. Judgment in favor of plaintiffs for the said sum of $709.50, and defendant excepted and appealed to this court.

This litigation grew out of the following state of facts, to-wit: The Ben Weil Commission Company of mercantile brokers, acting at the time and for some time previously as brokers for said T. H. Bunch, on the 11th day of May, 1899, sold to the plaintiffs, at Alexandria, 170 barrels of "Capital Brand" flour, warranted to grade as "extra fancy," which "extra fancy" graded as third grade pure flour in the market, for the sum and price of $935, or at the rate of $5.50 per barrel, to be thereafter shipped from said city of Little Rock and delivered to plaintiffs at the city of Alexandria. The flour was shipped by Bunch to his said brokers, and draft for the said sum, with bill of lading, was forwarded, and on direction of said brokers, the plaintiffs paid the draft, and took possession of the flour, and at once began to sell the same to their customers. As soon as these custom purchasers opened the same for use, it was discovered that the flour was not as represented, "extra fancy," but was a blended flour; that is, flour mixed with corn meal, about half and half, of a dark color, and of a peculiar odor. The flour thus sold was returned by plaintiffs' said customers to plaintiffs, and Bunch was notified of the same at once. In the meantime plaintiffs endeavored to sell the flour, and did sell some, but at a greatly reduced price from the invoice price, but could only dispose of forty-one barrels in all, including the barrels they had sold before observing the defect, and then demanded a rescission of the sale of the remaining 129 barrels, and the difference

between the invoice price and the price of sale of the forty-one barrels, which was refused by Bunch.

The motion for a new trial was based on eleven separate grounds, but they all may be included in three propositions, as formulated in appellees' brief, towit: "(1) Whether there is an implied warranty that goods sold to be delivered are merchantable and reasonably fit for the purpose of trade for which they are purchased. (2) Whether the purchaser, having disposed of a part of the goods before discovering the inferior quality, may, upon making such discovery, rescind the contract of sale by tendering back the goods undisposed of. (3) Whether Bunch sold the goods to plaintiffs or his broker, the Ben Weil Commission Company."

The first proposition involves the common law doctrine of *caveat emptor,* or, rather, the consideration of some of the exceptions to the rule growing out of that doctrine, which is stated generally: "When the purchaser has had no opportunity to inspect the goods purchased, to ascertain whether or not they be of the quality represented by the act of putting them in the trade, then the doctrine of *caveat emptor* does not apply;" for, says Mr. Benjamin, in his work on Sales (7th Ed.), § 645: "When a chattel is to be made or supplied to the order of the purchaser, there is an implied warranty that it is reasonably fit for the purposes for which it is ordinarily used." The purpose of plaintiffs' purchase of the flour in this case, and the use to which it was to be put, admit of no question.

In the English case of *Gardner* v. *Gray,* 4 Campbell, 144, cited in appellees' brief, in delivering his opinion, Lord Ellenborough said, "I think the plaintiff cannot recover on the count alleging that the silk should correspond with the sample. The written contract containing no such stipulation. I cannot allow it to be superadded by parol testimony. This was not a sale by sample. The sample was not produced as a warranty that the bulk corresponded with it, but to enable the purchaser to form a reasonable judgment of the commodity. I am of opinion, however, that under such circumstances the purchaser has a right to expect a salable article answering the description in the contract. Without any particular warranty, this is an implied term in every such contract. When there is no opportunity to inspect

the commodity, the maxim of *caveat emptor* does not apply. He cannot, without a warranty, insist that it shall be of any particular quality or fineness, but the intention of both parties must be taken to be that it shall be salable in the market under the denomination mentioned in the contract between them. The purchaser cannot be supposed to buy goods to lay them on a dunghill. The question then is, whether the commodity purchased by the plaintiff be of such a quality as can be reasonably brought into the market to be sold as *waste silk*. The witnesses describe it as unfit for the purposes of *waste silk,* and of such a quality that it cannot be sold under that denomination." So the witness in the case at bar describes the "blended flour" actually sold to plaintiffs by the defendant as unfit for the purposes of what was known in the trade as "Capital Brand" flour, or "extra fine" flour, and which was of the "third grade" of pure flour, and that it was of such a quality that it could not be sold under that denomination, but on the contrary it was, if flour at all in the true sense, of a very inferior grade, and could not be sold except far below the invoice price at which it was sold to plaintiffs by defendant.

The appellees' counsel cite a long list of cases applicable to the state of facts, which, without further comment, we cite for convenience of reference to those who may have occasion hereafter to refer to this opinion. Benjamin on Sales, cited above; *Dushane* v. *Benedict,* 120 U. S. 630; *Kellogg Bridge Co.* v. *Hamilton,* 110 U. S. 108; *English* v. *Spokane Com. Co.,* 57 Fed. Rep. 454; *Best* v. *Flint,* 56 Am. Rep. 570; *Gerst* v. *Jones,* 34 Am. Rep. 773; *Gallagher* v. *Waring,* 9 Wend. 20; *McClung* v. *Kelley,* 21 Ia. 508; *Osgood* v. *Lewis,* 18 Am. Dec. 323; *Fogel* v. *Brubacker,* 122 Pa. St. 7; *Merriam* v. *Field,* 24 Wis. 640; *Morehouse* v. *Comstock,* 42 Wis. 626; *Babcock* v. *Trice,* 18 Ill. 420; *Morse* v. *Union Stock Yards,* 14 L. R. A. 157; *Murchie* v. *Connell,* 155 Mass. 60; 10 Am. & Eng. Enc. Law (1st Ed.), p. 91, and note to "Implied Warranties:" *Curtis* v. *Williams,* 48 Ark. 330; *Weed* v. *Dyer,* 53 Ark. 160.

"The rule appears to be that, when there is a breach of warranty, express or implied, in the sale of goods, the purchaser may, if the goods have been delivered to him, and he has paid for them the price (as in this case), upon discovering the breach of warranty, tender the goods back, or so much thereof as are

undisposed of, and bring his suit against the vendor for the purchase price paid by him, less such amount as he may have realized on the goods disposed of before he ascertained the breach." Benjamin on Sales (7th Ed.), § § 893-904 inclusive, and the cases heretofore cited in support of the implied warranty rule. The flour in question was sold and received by plaintiffs on the 28th of May, 1898, and some of it was disposed of by plaintiffs to their retail customers until sometime in the first part of June following, when forty-one barrels were disposed of, and these purchasers discovered the defect, and were paid back the purchase price by the plaintiffs, except such as they bought at the greatly reduced price. The plaintiffs immediately notified the defendant through his broker, which was the custom, for convenience sake, and demanded a rescission of the contract of sale. As to the effect of selling a portion of the goods, after discovering the breach, see 1 Parsons on Contracts, pp. 591-594, inclusive, and note thereunder. It was necessary, under the circumstances, to sell the flour to the consumer before it could be reasonably asked that an inspection should be made; and, secondly, it was for the benefit of defendant as for plaintiffs to dispose of as much of the inferior goods as possible to prevent total loss.

Whether Bunch sold the flour to plaintiffs or to his brokers was a question of fact for the jury under proper instructions of the court.

The instructions given by the court were as follows :

"The jury are instructed that in the sale of goods, wares and merchandise to be delivered there is an implied warranty that the articles purchased will be reasonably merchantable and reasonably fit for the purpose for which they are sold, and if you find from the evidence in this case that the flour delivered plaintiffs was not of a reasonably merchantable character, and not reasonably fit for the purpose of the sale, then plaintiffs, upon discovering that fact within a reasonable time, would have the right to rescind the contract, and, upon tender of the property, or offer to return the same to the vendor, within a reasonable time, the plaintiffs could sue for and recover the purchase money, together with any loss sustained by them in the sale of flour prior to the discovery of its condition."

"If the jury find under the instructions given that plaintiffs had a right to rescind the contract of the sale, then, if they find that the plaintiffs disposed of part of the flour in the ordinary course of trade, which was not returned to them, but for which they allowed the purchaser a reasonable reduction in the price on account of its inferior quality, and, being advised of such condition, plaintiffs held the remainder of the flour for defendant, and notified defendant of the fact of its rejection within a reasonable time after their knowledge thereof, then their measure of damage is the price which they paid for the flour which they have on hand, together with cost of drayage, freight and storage, if any, and such loss as you may find they sustained in the sale of flour not on hand by reason of its inferior quality."

"You are instructed that a man can make a contract through an agent, as well as the principal himself, and if you find in this case that Weil Bros. & Bauer purchased the flour in controversy from the Ben Weil Commission Company, believing them to be in the matter acting as the agent of Bunch, and dealing with him as such, and Bunch had held him out as his agent to sell flour in that territory, so that Weil Bros. & Bauer had a right, as reasonable persons, to regard him as agent for Bunch in this transaction, then the purchase is binding on Bunch as if he had sold it himself in person."

It is claimed by the plaintiffs in the case that the contract of purchase was made by them with the defendant Bunch through his agent, Ben Weil Commission Company, and defendant denies this, and claims that he sold the goods, not to plaintiffs, Weil Bros. & Bauer, but to Ben Weil Commission Company direct."

On the court's own motion: "Now, upon this issue the court instructs that an agent duly authorized to make sales may do this, and his principal is bound by the sale as his own, and it is for you, in view of all the circumstances in proof before you, to say whether the plaintiffs, Weil Bros. & Bauer, bought the goods from Bunch through the Ben Weil Commission Company as Bunch's agent, or whether they must be regarded as having bought from Ben Weil Commission Company directly."

The admission of certain letters in evidence was not error for the purpose admitted by the court.

We see no error in the instructions of the court, and there was evidence to sustain the verdict of the jury. So the judgment must be affirmed, and it is so ordered.

WOOD, J., did not participate in the consideration of this case.