## CARPENTER v. CROW.

### Opinion delivered February 3, 1906.

1. SALE—IMPLIED WARRANTY.—In a sale of an article of food, such as milk, which the purchaser had no opportunity to inspect, there is an implied warranty that it shall be pure and fit for use. (Page 525.)

2. SAME—AGREEMENT FOR REBATE—FORFEITURE.—Where a vendor of cattle, which were to be paid for in monthly installments, by a separate agreement contracted to purchase fresh sweet milk from the vendee, and subsequently agreed that the latter should be given a rebate of $300 upon his indebtedness for the cattle if he faithfully performed his contract for the sale of milk, he was not entitled to the rebate if he furnished milk that was impure and unfit for use. (Page 525.)

3. SAME—REBATE—WAIVER.—Where, by the terms of an agreement for the sale of cattle, the purchaser thereof was to receive a rebate on the purchase money if he faithfully performed a separate contract to furnish to the sellers of the cattle a certain quantity of fresh sweet milk daily, the latter, by continuing to accept the milk as furnished and to pay therefor, did not waive the right to refuse to allow the rebate on account of the inferior quality of the milk furnished. (Page 526.)

4. SAME—RESERVATION OF TITLE—WAIVER.—In a contract for the sale of cattle wherein the title to the cattle was reserved in the vendor until the purchase money was paid, and until a separate contract for the sale of fresh milk to be furnished to the vendor by the vendee daily should be fully complied with, the vendor could not continue to accept

money in payment of the cattle and at the same time insist that no title to the cattle passed by reason of a prior breach of implied warranty of the quality of the milk. (Page 526.)

Appeal from Lonoke Circuit Court; GEORGE M. CHAPLINE, Judge; reversed.

### STATEMENT BY THE COURT.

This is an action of replevin brought by J. W. Carpenter and Gus Breitzke against W. N. Crow to recover possession of ninety-five milk cows and seventy-five calves. The plaintiffs were the owners of the cattle, and sold them to one I. M. Tuller, who in turn sold to defendant Crow. The consideration for the sale from plaintiffs to Tuller was $3,600, of which $600 was paid cash at the time of the sale, and the balance was to be paid in monthly installments of $200 each, represented by the notes of Tuller executed to plaintiffs. At the time of the sale of the cattle Tuller and the Grand Prairie Creamery Company entered into a written contract with plaintiffs, whereby they undertook to furnish to plaintiffs sweet milk in quantities, as ordered, not less than one hundred gallons nor more than four hundred gallons per day, and such amount of cream as should be ordered during a term of two years, at the price therein named to be paid by plaintiffs on Tuesday of each week. It was agreed that "the milk and cream so furnished must be fresh and of the morning's milking of each day, or other milk satisfactory to party of the second part (plaintiffs).

The contract of sale of the cattle contained a stipulation that the title to the cattle should remain in the plaintiffs until all of the purchase money notes should be paid, and also until said contract for the sale of milk should be fully complied with by said Tuller and the Grand Prairie Creamery Company, and that, in the event of their failure to pay said notes as they fall due, or to comply with the contract to furnish milk, then the plaintiffs should have the right to take possession of the cattle.

The contract of sale of the cattle and the milk contract were executed on May 15, 1901, and on January 8, 1902, when all the purchase money notes had been paid except five, aggregating the sum of $1,000, the plaintiffs executed and delivered to Tuller a written agreement whereby they agreed to extend the time of payment of said notes, and "to give I. M. Tuller a rebate of $300

upon his indebtedness to it, conditioned upon the faithful performance" of said contract for the sale of milk.

Defendant Crow on October 1, 1902, purchased the cattle from Tuller and the milk contract, and thereafter furnished milk to plaintiffs under the contract and made payments on the purchase notes.

Defendant claimed that, after deducting the sum of $300 which plaintiffs had agreed to rebate, he had paid the debt down to $104, which sum he tendered to plaintiffs.

There is no dispute concerning the payments made on the notes, but plaintiffs refused to allow the rebate of $300, for the reason, as they allege, that Tuller and defendant Crow failed to comply with the milk contract; that the milk furnished was impure and unfit for use. The quantity of milk mentioned in the contract was furnished daily for the full term of the contract, and paid for weekly by plaintiffs as provided by the contract, but plaintiffs introduced testimony to the effect that the milk was unfit for use, and they sustained damages to their business as dairymen by reason of the failure of Tuller and Crow to furnish milk fit for use.

The court, on its own motion, over plaintiffs' objections, instructed the jury as follows:

"That plaintiffs continued to receive milk from defendant and make weekly remittances for same up to May 15, 1903. Any breach of the contract to furnish milk of certain grade and quality, happening during the existence of the contract, was waived by plaintiffs, and they are estopped from complaining on account of said breach, and not entitled to recover in this action on said contract; nor are they entitled to set up a breach on this account to deny to the defendant the right to credit $300 on notes introduced in evidence. The court directs a verdict for defendant."

The jury returned a verdict in favor of the defendant, and judgment was rendered accordingly.

The amount tendered by defendant, $104, was paid into court and ordered to be paid over to plaintiffs.

*Atkinson & Patterson,* for appellants.

The court erred in its declaration of law. That plaintiffs continued to receive and pay for the milk did not constitute a waiver of breaches on the part of the vendee or Crow.      56

Ark. 450. Acceptance of payment after default is not a waiver of vendor's rights. 53 Cal. 597; 49 N. Y. Sup. Ct. 42; 5 Wash. 276. The question of waiver was a question of fact for the jury. 88 Me. 450; 78 Wis. 240; 8 N. Dak. 244.

*Bradshaw, Rhoton & Helm* and *Trimble, Robinson & Trimble,* for appellee.

If there was a breach, it was appellants' duty to declare the contract forfeited. Not having done so, but continuing to receive the milk, the breach, if any, was waived. Parsons on Cont. 631 ; Page on Cont. § 1500; 70 Fed. 146; 7 Am. & Eng. Enc. Law, 154. Appellants, having permitted Crow to purchase the contract with the understanding that the rebate was to be allowed, are estopped to deny it. 35 Ark. 376; *Ib.* 293; 29 Ark. 218; 37 Ark. 47; 50 Ark. 427; 52 Ark. 207.

McCULLOCH, J., (after stating the facts.) The court erred in declaring the law and giving the peremptory instructions to the jury to return a verdict for the defendant.

Plaintiffs' agreement to allow a rebate of $300 on the notes was upon condition that Tuller and the Creamery Company should faithfully perform the contract for the sale of milk, and there was testimony sufficient to go to the jury that they had failed to do so. The milk contract stipulated only that the milk and cream should be "fresh and of the morning's milking of each day;" but, it being an article of food, and plaintiffs having no opportunity to inspect it, there was an implied warranty that it should be fit for use. *Truschel* v. *Dean, post* p. 546; *Bunch* v. *Weil,* 72 Ark. 343 ; 2 Mechem on Sales, § 1358.

Furnishing impure milk was not a compliance with the contract, and the jury should have been instructed that, if there had been a default in the performance of the contract in this respect, the defendant was not entitled to the rebate.

It is, however, contended on behalf of appellee that appellants, by continuing to accept the milk and pay for it weekly until the term mentioned in the contract expired, waived the right to refuse the rebate on account of the quality of the milk furnished. It is argued that appellants should have refused to accept the milk, declared the contract of sale forfeited, and re-claimed the cattle; otherwise, they are deemed to have waived the right to object to the breach of the contract in this respect. This

is not sound. Appellants had a right to accept the milk without waiving the breach of warranty of its quality, and they have a right to refuse to allow the rebate because of the breach. *McDonough* v. *Williams, ante* p. 261, and cases cited.

The milk contract and the agreement for rebate on the purchase notes were separate and distinct contracts, and appellants, by accepting a quality of milk below the standard required by the contract, did not waive their right to insist that the conditions upon which they had agreed to allow the rebate had not been performed, nor did their acceptance of the milk estop them from saying that the conditions upon which they had agreed to allow a rebate had not been performed, nor was it an election on their part not to insist upon a breach of the contract. Counsel argue with much earnestness that the plaintiffs are estopped from claiming a breach of the contract, but we see nothing in this case upon which the doctrine of estoppel can be invoked, so far as the right to refuse the rebate is concerned. Appellee admits that he knew, when he purchased the cattle, the condition upon which the rebate was promised, and the proof shows, if it establishes a breach of the contract at all, that the breach was committed by him after he purchased the cattle from Tuller. That being true, how can he plead an estoppel?

It is different, however, as to appellant's right, upon payment in full of the purchase notes by appellee, to claim a forfeiture and retake the cattle on account of the breach of the milk contract. The acceptance of payments of the notes after the breach of the milk contract was a waiver of the right to insist on the forfeiture. It would be manifestly unjust to allow appellants to continue to accept payments on the notes and at the same time insist that no title to the cattle passed because of the breach of implied warranty as to quality of the milk furnished. As we have already stated, appellants did not, by acceptance of the milk and making payment therefor, waive their right to refuse the promised rebate on the notes, nor their right to sue for damages for breach of the implied warranty of the quality of the milk, but by acceptance of payment of the notes they did waive their right to insist that no title passed because of the alleged breach of warranty.

The court erred in giving a peremptory instruction to the jury, but should have submitted the case to the jury upon

proper instruction as to whether or not there had been a breach of the implied warranty of the quality of the milk furnished under the contract. If there has been such a breach, appellee is not entitled to the rebate of $300 on the notes, as the agreement for allowance of the rebate is conditioned upon a performance of the milk contract; and if it has not been performed, the verdict should be for appellants, because, according to the contract of sale, no title passed until the purchase notes should be paid in full. In other words, if the jury find that there has been a breach of the implied warranty as to the quality of milk furnished, then appellee is not entitled to the rebate of $300, and must pay the full amount of the purchase notes before he can defeat appellant's right to recover the property. But appellants, by acceptance of the milk and the payments made by appellee on the notes, are deemed to have waived their right to retain title until the alleged damages arising from such breach of warranty be paid, and they must recover such damages in a separate action brought for that purpose.

Reversed and remanded for new trial.