LA NASA et al. v. RUSSELL PACKING CO.

No. 10621.

United States Court of Appeals
Seventh Circuit.

Oct. 2, 1952.

products in the city of New Orleans, La. They contracted with defendant to purchase 80 drums of refined dry rendered lard suitable for use and to be used in baking bread. Plaintiffs received and paid for it, and thereafter sold part of it to another bakery. Both bakeries immediately started using the lard in baking bread, and in a few days both began receiving complaints about the offensive odor of the bread when toasted. Investigation disclosed that the odor emanated from the lard. The complaint alleged that the lard was not of warranted quality; that both bakeries used due precautions in the care of the lard while in their control; that as soon as plaintiffs became aware of the defect in the lard they rejected it and reimbursed the bakery to which they had sold a part, in full for the part sold; that they demanded reimbursement from defendant for the purchase price plus storage charges for the lard, which demand defendant rejected, whereupon plaintiffs sued defendant in the appropriate court in New Orleans, "obtaining jurisdiction of Russell by judicial attachment of the unused portion of said lard; * * *." The complaint further alleged that plaintiffs recovered judgment for the purchase price of the lard plus storage charges until sold, to be satisfied only out of the proceeds of the sale of the lard attached; that the lard was judicially sold under writ of execution for $534, leaving a balance due of $5,504, for which amount plaintiffs demanded judgment.

Thomas J. Carroll, Chicago, Ill., for appellant.

Howard Ellis, Georges H. Dapples, Chicago, Ill., for appellees.

Before KERNER, DUFFY and LINDLEY, Circuit Judges.

KERNER, Circuit Judge.

This suit was brought by the buyers of 80 drums of lard to recover the purchase price of the lard with costs for handling, storage and other expenses, on the ground of breach of warranty of quality. Jury was waived, and upon hearing, the court found that plaintiffs were entitled to recover the full amount of the purchase price of the 80 drums, amounting to $5,160, plus storage charges of $428, with interest from February 3, 1949, on which date plaintiffs notified defendant of their rescission of the sale, plus court costs, subject to a credit of $267.

The principal questions raised are whether the requisite jurisdictional amount was actually involved, and whether plaintiffs were entitled to rescind the contract and recover the amount paid, having sold or used a substantial portion of the lard (27 of the 80 drums) prior to their attempted rescission.

Plaintiffs, three brothers, are copartners engaged in the manufacture of bakery

■ In denying that the matter involved in the controversy exceeded $3,000, defendant asserts that the purchase of the 80 drums was a joint venture by plaintiffs and Holsum Bakeries, plaintiffs to take 45 drums and Holsum 35, and that plaintiffs' net cost of the 45 drums amounted to only $2,918, and that the court's findings that plaintiffs purchased 80 drums of lard from defendant and resold 35 drums to Holsum are not supported by the evidence. As to this we think it is fair to say that there was a conflict in the evidence, and inasmuch as it is clear from the record that the lard was ordered by plaintiffs' manager, and that plaintiffs paid the full purchase price for it by their own check before it was released

by the railroad, the court was justified in the finding, even though the manager himself testified that 35 drums were delivered direct to Holsum "who cooperated with La Nasa in the purchase of the entire shipment." And we deem it immaterial that plaintiffs did not actually reimburse Holsum by payment in full in cash until after filing of the suit in view of the evidence of the agreement to make such reimbursement together with that relating to a balancing of accounts between them on other items. We think that on the record here, this case falls within the rule stated in Saint Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 288, 58 S.Ct. 586, 590, 82 L.Ed 845, "the sum claimed by the plaintiff controls if the claim is apparently made in good faith."

With respect to the second question, defendant contends that plaintiffs could not legally rescind the contract for three reasons: The attempt to rescind was not timely; plaintiffs and their cooperating purchaser had used and could not return a substantial portion of the shipment; and plaintiffs had neither title to nor possession of the part of the shipment purchased but not used by Holsum.

On this issue the court found that plaintiffs began using the lard in baking bread on January 19, 1949, the day after they received it, and Holsum began using it a day or two later. Both stored it in cool warehouses. Both began receiving complaints some two to four days after commencing to use the lard, and neither had ever received such complaints except as to the bread baked with the lard in suit. Investigation revealed that the odor was attributable to the lard which, although practically odorless when cold, gave off a strong offensive odor when heated. This odor was not discoverable during the baking process because the ventilating mechanism of commercial ovens carries off such odors and because the crusting of baking loaves and the insulation of ovens would also preclude emission of the odor during baking. This latent quality of the lard rendered it unfit for commercial use in baking bread. Promptly upon discovery of the defect plaintiffs and Holsum discontinued the use of it, except for the inadvertent use by the latter of three more drums. Plaintiffs notified defendant of their rescission of the sale on February 3, 1949, and that they were holding the unused portion of the lard for defendant's account.

The court further found that it is the general custom of the baking trade that shipments of lard are not specially tested before use in baking and that refunds are made of the entire purchase price of baking products which upon use prove not to be of warranted quality; that plaintiffs and Holsum discovered the latent defect in the lard and stopped using it as promptly as was reasonably possible, and their rejection of the lard and rescission of the sale was timely. Upon disclaimer of liability by defendant, plaintiffs filed suit in Louisiana on the same cause of action as here asserted, obtaining jurisdiction of defendant by attachment of the unused portion of the lard, which was sold on May 24, 1949, at a duly advertised public sale after considerable effort by one of the plaintiffs to attract buyers. In addition there was evidence that the lard was sold for soap-making purposes and that the price received was fair in the light of the quality of the lard.

Defendant contends that the findings are not supported by the evidence and are in several respects contrary to plaintiffs' own evidence. We cannot agree. As in the case of the findings on the first issue, the record discloses substantial evidence in support of these findings even though that evidence was in some respects contradictory.

A somewhat different question is presented as to whether, on these findings, plaintiffs are entitled to the relief sought—rescission of the contract and recovery of the entire purchase price, although a substantial amount of the lard, 27 of the 80 drums, had been consumed so could not be returned.

Defendant contends that plaintiffs, by the use of this quantity of the lard, had put it beyond their power to return the shipment and rescind. Their principal reliance is upon the case, Reno Sales Co. v. Pritchard Industries, 7 Cir., 178 F.2d 279. There

the seller sued for the unpaid balance for a quantity of waste baskets and the buyer denied liability on the ground of breach of warranty and counterclaimed for the amount already paid, having notified the seller of its rescission and offered to return those remaining in its possession. We held that the attempted rescission was timely, with time running only after the buyer had knowledge or was chargeable with knowledge of the breach of warranty. The difficulty there, however, was that even after that attempted rescission with an offer to return the baskets, the buyer "made no attempt or effort to do so, and continued to sell them up to the date of trial," at least sixteen months later. For that reason we held the rescission ineffective as to the entire contract and, since we found that the contract was entire and not severable, the buyer was not entitled to relief by rescission. To the same effect are several Illinois decisions also relied upon by defendant, that resale of the goods involved extinguishes the right of rescission for breach of warranty—all appear to be based on the exercise of control or dominion after discovery of the breach which might have given rise to a right of rescission if properly exercised. We think such cases do not compel a decision for the seller under the facts of this case. Plaintiffs established the custom of the industry not to test the standard ingredients used in baking prior to their use, and for refunds for any which prove upon use to be substandard. Such industry customs become a part of the contract. Doane v. Dunham, 79 Ill. 131; Steidtmann v. Joseph Lay Co., 234 Ill. 84, 84 N.E. 640; Green v. Ryan, 242 Ill.App. 466. This is recognized by § 71 of the Uniform Sales Act, Ill.R.S. Chap. 121½, § 71, which provides for variation of obligations in accordance with custom if the custom is such as to bind both parties to the contract or sale. Hence, although § 69 of the Act does not make specific provision for refund for portions of the goods wholly consumed prior to discovery of their absolute unfitness for the purpose intended, we think there is sufficient evidence of the custom of the industry to entitle plaintiffs to rely upon that custom and usage in demanding refund of the entire purchase

price here. Cf. Clifford v. Steward, 153 Minn. 382, 190 N.W. 613; Bunch v. Weil, 72 Ark. 343, 80 S.W. 582, 65 L.R.A. 80; Tex-O-Kan Flour Mills Co. v. Nord, La. App., 18 So.2d 50.

Judgment affirmed.