ROBERT  W.  L.  RASIN  &  CO.  *vs.*  CHARLES  W.
CONLEY.

*Action to recover the Purchase money for goods sold—Proper
instruction as to the Verdict—Right of the Appellate Court
to consider the effect of the absence of Proof—Admissibility
of evidence—Warranty—Sales of Fertilizers.*

In an action to recover the purchase money for the sale of goods,
there being a conflict of testimony as to whether the article fur-
nished was of the quality ordered, it was HELD:

That the jury were properly instructed, that if they found that the
article furnished was not the one ordered but another and inferior
article, the plaintiffs were only entitled to recover such sum, if any,
as the jury should find, from all the facts and circumstances of the
case, the article furnished was reasonably worth.

In an action to recover the price of a fertilizer sold to the defendant
by the plaintiffs, the defence was made that the agent of the plain-
tiffs, when he made the sale, was authorized and did warrant it to
him to be equal to any other fertilizer in the market of equal or
less price.  Proof, to which the plaintiffs objected, was admitted
by the Court below, showing that B's fertilizer used on the same
field produced far better results than that purchased of the plain-
tiffs.  HELD:

1st. That although the objection could not be taken in this Court
that there was *no proof* that the agent ever made to the defendant
the warranty claimed, as the record did not show that this question
was directly made to and decided by the Court below, (Rule 4 in
29 *Md.*, 2,) yet the question as to the effect of the *absence of such
proof*, arose and must be considered in disposing of the ruling of
the Court below in admitting the evidence as to the superiority of
B's fertilizer over the plaintiffs'.

2nd. That said evidence was clearly inadmissible, unless a warranty
similar or of like effect to that *set up* by the defendant, or repre-
sentations amounting to such a warranty, were in fact made to the
defendant by the plaintiffs' agent, at or before the time of the sale.

3rd. That where a known, described and defined article is ordered, even of a manufacturer, although it is stated to be required by the purchaser for a particular purpose, still if the known, described and defined thing be actually supplied, there is no implied warranty that it shall answer the particular purpose intended by the buyer. In such case the buyer takes upon himself the risk of its effecting its purpose.

4th. That this doctrine applies to sales of fertilizers by those who manufacture them.

5th. That to render the evidence objected to as above admissible, it should have been preceded by proof tending to establish the special warranty referred to, or it should have been accompanied by an offer to follow it up with such proof.

6th. That if proof of such warranty had been adduced, the testimony objected to would have been admissible to show a breach of it.

APPEAL from the Circuit Court for Prince George's County.

The case is stated in the opinion of the Court.

*First Exception.*—At the trial the defendant's counsel asked a witness (the defendant,) the following question:

"Did you use any other fertilizer, or Bond's Fertilizer on the same field, and what was the difference in the wheat between that portion of the field where you used Bond's Fertilizer, and that portion of the field where you used the Raisin Fertilizer?"

To which question the plaintiffs objected, but the majority of the Court, (BRENT and MAGRUDER, J.) overruled the objection and allowed the question to be answered, and the witness answered:

"That where the Soluble Sea Island Guano was applied, the wheat did not yield over four bushels to the acre, and where Bond's Guano was applied, nearly seventeen bushels to the acre; where the Sea Island was applied, it could not be sold as wheat, it was like screenings—shrivelled.

The land where he put Bond's Fertilizer had been culti-
vated, and the other where Sea Island was put was sod;
couldn't cut the Sea Island wheat with the reaper; and
that the land where Bond's Fertilizer was put, was, if any-
thing, harder than where Sea Island was put."

The plaintiffs excepted to the ruling of the Court in
allowing the said question to be put and answered, and
also to the answer as given.

*Second Exception.*—The plaintiffs offered the following
prayer:

If the jury find from the evidence in the cause, that the
defendant on or about the 16th day of September, 1876,
ordered the plaintiffs to send him six thousand pounds of
Soluble Sea Island Guano, for which he promised to pay
one hundred and thirty-eight dollars; and shall further
find that said quantity of said guano was shipped by the
plaintiffs for the defendant in pursuance of said order, and
that he received the same, then the plaintiffs are entitled
to recover.

And the defendant offered the two following prayers:

1. If the jury find from the evidence, that Wesley
Matthews was the agent of the plaintiffs for the sale of
their fertilizer, called "Soluble Sea Island Guano," and
that the said defendant purchased through said agent
three tons of said guano, and that the said agent was
authorized and did warrant to the said defendant, at
the time of said sale, said guano or fertilizer to be com-
posed of animal bones and flesh with the addition of pot-
ash, and to be equal to any other fertilizer in the market
of equal or less price; and if they further find, from all
the facts and circumstances in the case, that the guano
delivered to the defendant was inferior in value as a fer-
tilizer to any other fertilizer sold in the market, of equal
or less price, used in the same field and under similar cir-
cumstances by the defendant, then the said plaintiffs under
the pleadings in this case are entitled to recover only such

sum, if any, as they may find the said guano to be reasonably worth.

2. If the jury shall find from the evidence, that the defendant ordered of the plaintiffs, through their duly constituted agent, three tons of Sea Island Guano, and that the article furnished was not the one ordered, but another and inferior article, then the plaintiffs are only entitled to recover such sum, if any, as the jury shall find from all the facts and circumstances of the case the article furnished was reasonably worth.

The Court (MAGRUDER and FORD, J.,) refused the prayer of the plaintiffs, as offered, but granted it with the following addition:

"Unless they shall further find, that it was sold under the circumstances and facts mentioned in the instructions granted in lieu of the prayers offered by the defendant, subject to which instructions this prayer is granted."

And granted the two prayers of the defendant.

The plaintiffs excepted, and the verdict and judgment being for the defendant, they appealed.

The cause was argued before BARTOL, C. J., STONE, GRASON, MILLER, and IRVING, J.

*Joseph K. Roberts, Jr.,* for the appellants.

*C. C. Magruder, Jr.,* for the appellee.

MILLER, J., delivered the opinion of the Court.

In this case suit was brought by the appellants against the appellee upon the following note:

"Montgomery Co., Md., Sept. 16th, 1876.
"Messrs. R. W. L. Rasin & Co.:

"Will please forward me thirty bags, of Soluble Sea Island Guano, say 6000 pounds, for which I promise to pay

you one hundred and thirty-eight dollars on or before the 16th day of September 1877; Payable at National Bank of the Republic, Washington, D. C.

"$138.00.                    C. W. Conley."

At the trial two exceptions were taken, one as to the admissibility of certain testimony offered by the defendant, and the other to the rulings of the Court upon the prayers. The case was tried upon the theory that there were two defences to the action, viz., 1st, that the article furnished was not the article ordered, and 2nd, that the plaintiffs' agent by whom the sale was effected warranted the article to be composed of certain materials, "and to be equal to any other fertilizer in the market of equal or less price," whereas it was in fact greatly inferior to such other fertilizers.

*First.* As to the first point there was a conflict of testimony and the defendant's second prayer properly stated the law upon this branch of the case. By the granting of this prayer the jury were instructed, that if they found from the evidence that the defendant ordered of the plaintiffs, through their duly constituted agent, three tons of Sea Island Guano, and that the article furnished was not the one ordered but another and inferior article, then the plaintiffs are only entitled to recover such sum, if any, as the jury shall find from all the facts and circumstances of the case, the article furnished was reasonably worth. There was clearly no error in granting this instruction.

*Second.* The second point involves a consideration of the defendant's first prayer, and the ruling admitting the evidence which is the subject of the first exception. The Court granted the defendant's first prayer to the effect, that if the jury find that the plaintiffs' agent, *when* he sold the guano to defendant, was authorized and *did warrant it to him* to be composed of animal bones and flesh with the addition of potash, and *to be equal* to any other

Rasin & Co. *vs.* Conley.

fertilizer in the market of equal or less price; and if they further find from all the facts and circumstances of the case that the guano delivered to the defendant, was inferior in value as a fertilizer to any other fertilizer sold in the market of equal or less price, *used in the same field and under similar circumstances by the defendant*, then the plaintiffs, under the pleadings in this case, are entitled to recover only such sum, if any, as they may find the said guano to be reasonably worth. It is objected that there was *no proof* that the agent ever made *to the defendant* the warranty set out in this prayer. The record, however, does not show that this question was directly made to and decided by the Court below, and it cannot therefore be raised in this Court as an objection to the prayer. *Rule* 4 in 29 *Md.*, 2. But the question as to the effect of the *absence of such proof* arises and must be considered in disposing of the ruling in the first exception. By that exception it appears that the defendant offered to prove that he used, in connection with this guano, Bond's Fertilizer, which was sold at $45 per ton, applying the same quantity, under the same circumstances, on the same field, and that where the first was applied the wheat did not yield over four bushels to the acre, was like screenings, shrivelled, and could not be sold as wheat, but where Bond's was applied the yield was nearly seventeen bushels to the acre. The Court allowed this testimony to go to the jury, and to this ruling the plaintiffs excepted. In our opinion, the testimony was clearly inadmissible, unless a warranty similar or of like effect to that stated in the defendant's first prayer, or representations amounting to such a warranty, were in fact made to the defendant by the plaintiffs' agent at or before the time of the sale.

It appears by the note in suit that the defendant ordered the plaintiffs to forward to him a specific quantity of a specific fertilizer called "Soluble Sea Island Guano," and it is proved the plaintiffs were the manufacturers of the arti-

cle, and employed agents to sell it. The law is well settled that where a known, described, and defined article is ordered, even of a manufacturer, although it is stated to be required by the purchaser for a particular purpose, still if the known, described and defined thing be actually supplied, there is no implied warranty that it shall answer the particular purpose intended by the buyer; in such case the purchaser takes upon himself the risk of its effecting its purpose. 1 *Parsons on Cont.,* 468 *to* 472; *Jones vs. Just, Law Rep.,* (3 *Queen's Bench,*) 197; *Benjamin on Sales,* 613; *Rice vs. Forsyth,* 41 *Md.,* 403. And it is equally well settled that this doctrine is applicable to sales of fertilizers by those who manufacture them. *Mason vs. Chappell,* 15 *Grattan,* 572. The case of *Walker vs. Pue,* 57 *Md.,* 155, was of a similar character, and a like question as to the admissibility of testimony arose. The suit was upon a note given for three tons of a fertilizer called "Eureka," and the defendant offered proof to the effect that it did not produce good crops upon the land to which he applied it. This proof was offered in connection with other evidence in the cause, to prove a breach of warranty, as well as a *failure of the consideration* for which the note in suit was given. But the Court, upon the strength of the authorities above cited, held the testimony to be inadmissible, because the defendant had bought a specific article well known to him, without taking any express warranty as to quality or that it would *produce a good crop.* This disposes of the contention on the part of the appellee, that even in the absence of an express warranty, the testimony was admissible for the purpose of showing a *total* or *partial* failure of consideration for the note sued on. Without proof of such warranty the law of the case is correctly stated in the plaintiffs' prayer as offered by their counsel. To render the testimony admissible, it should have been preceded by proof tending to establish the special warranty referred to, or it should have

been accompanied by an offer to follow it up with such proof. So far as the record discloses there was no such antecedent proof, nor any such offer. It was therefore error to admit the testimony, and for this error the judgment must be reversed and a new trial awarded. If proof of such warranty had been adduced, we are clearly of opinion this testimony would have been admissible to show a breach of it; for it is hardly possible for the farmers to whom these products are sold, to prove that one is *not equal in fertilizing qualities* to another, in any more satisfactory way than by showing the different results in crops, when both are applied at the same time, under the same circumstances, and in like or appropriate quantities, to the same soil prepared in the same manner and in the same field. In the case of *Walker vs. Pue*, the only warranty given was, that the "Eureka,". which was sold to the defendant in the year 1877 "would keep up to its standard of the previous year in analysis and preparation for drilling," and proof that it did not produce good crops on his land, was held not to be admissible for the purpose of showing a breach of that warranty. There was no warranty as to quality, or that it was equal to any other fertilizer, or that it would produce good crops.

*Judgment reversed, and*
*new trial awarded.*

(Decided 2nd March, 1882.)