JAMES GLOVER, PLAINTIFF IN ERROR, VS. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

1. The jury on the trial of a cause are the sole judges of the credibility of the witnesses and the weight of the evidence, and when they find the facts in a contested case where there is a conflict of evidence, it is seldom that this court will reverse the finding on appeal.

2. In an indictment for larceny, the article charged to have been stolen should be sufficiently described, so that there may be no doubt of its identity.   This is required for the protection of the accused against further prosecution for the same offence.

3. The articles so alleged to have been stolen may be described by the name by which they are generally known or called in the community and among the people, and the evidence must substantially correspond with the description in the indictment.

4. The defendant was indicted for the larceny of a gold watch.   On the trial a practical jeweler and watchmaker, after carefully examining the watch, testified that it was not a gold watch; that there were thin plates of gold on the outside and inside of the outside cases and filled with some baser metal.  It is called a filled case  It is not known as a gold watch by the trade, but is known by the people generally as a gold watch.   All the witnesses spoke of it as a gold watch, and it had every appearance of being gold: *Held*, That this was no variance between the allegation in the indictment and the proof.

5. An alleged error in the charge of the court to the jury, to be taken advantage of on appeal, should be excepted to at the time, or embodied in the motion for a new trial, as provided for by chap. 3431, Laws 1886.

Writ of error to the Circuit Court for Hillsborough county.

The facts of the case are stated in the opinion.

*Hammond & Macfarland* for Plaintiff in Error.

*The Attorney-General* for Defendant in Error.

MR. JUSTICE VANVALKENBURGH delivered the opinion of the court:

This is a writ of error to Hillsborough Circuit Court, brought by James Glover, who at the October term in the year 1885 was convicted of the larceny of a certain gold watch.

The errors alleged, and the grounds thereof as set out in the assignment, are as follows:

"1st. We insist that the finding of the jury was contrary to law—the court having charged the jury that they must believe the defendant to be guilty to the exclusion of every other reasonable hypothesis.

"2d. The verdict was contrary to the evidence.

"3d. The verdict of the jury was contrary to the weight of evidence.

"4th. The verdict was contrary to the charge of the court: in this, the court having charged the jury that they must believe the defendant guilty beyond all reasonable doubt.

"5th. The court erred in charging the jury that the watch need not be wholly gold; that if it was composed partly of gold it was sufficient; when the indictment charged the

watch to be gold, and the proof showed it was only galvanized.

"6th. The court erred in charging the jury that they were the sole judges of the evidence, and the credibility of the witnesses, and they had a right to disbelieve any witness that testified if they did not believe his testimony."

As to the first four alleged errors, that the verdict was contrary to law, to the evidence, to the weight of evidence, and contrary to the charge of the court, we will consider them together. The evidence, as it appears in the record, is somewhat confusing, but the witnesses were before the jury; they saw and heard them testify, and they are the judges not only of the weight of the evidence, but also of the credibility of the various witnesses.

W. F. Burts testified that he·was a member of the firm of W. F. Burts & Co., doing business at Plant City. That one George W. Wells was his partner. "This is the watch taken from our show case between the first and tenth of last May. I recognized the watch from its general appearance and from this broken spring, (pointing to a certain slide spring on the edge of the watch.) This spring was broken before the watch was taken from our show case, and it was in the same condition when recovered from Jane Miller. It is a gold watch and I was offering it for sale at forty dollars. That was its value when taken. The watch belonged to the firm, and was taken from the store without the knowledge or permission of the firm, or either of them. About the first of September the girl Jane Miller came into the store. Daffin first spied the watch and asked the girl to let him look at it. He examined it. I had it in my hands and recognized it as the watch taken from my store. I had her arrested and as the result of what she told me I had Glover, the defendant, arrested, and he claimed the watch as his and said he had got it at Cedar

Key. A short time after that he said he got it at Key West. I called his attention to the fact that he had at first claimed he got it in Cedar Key. He then said "I must have made a mistake, ' I got the watch at Cedar Key.' "

Jane Miller, for the prosecution : "I know James Glover ; (watch shown her;) I had that watch in my possession; I got it from Glover; had it about three months before it was taken from me ; Glover let me have it and said I could wear it ; I was in Mr. Burts' store when it was first discovered ; Glover said he had got the watch at Key West. I think the watch was taken from me about August."

Daffin was sworn for prosecution, and says: "I was working and clerk in Burts' store from first of July, 1884 ; saw the watch every day up to the time it was missing ; this is not the watch taken from the store ; am in the employment of Burts now ; no sir, I don't think it is the watch."

T. S. Brown testified : " I know Burts & Wells ; went to their store in January, 1885, and clerked for them until some time in April, after ; the number of the watch in the store was 305 ; the number on that watch was in the same place that this is ; I saw the number, 305 ; I saw the watch last Saturday and noticed the number ; was able to tell the number of the watch before I looked at it."

For the defence, Henry Young testified : "I can't say that this is the same watch that Glover had the first week of Christmas ; he showed me a double faced flowered watch Christmas week ; saw Miss Jane Miller with the same watch in February ; I asked her to show me the watch, it was the same watch Glover had. Did not notice particularly enough to tell any difference between the watches. It was a flowered double case gold watch and was a stem-winder. Saw Jane Miller have the watch when she was fixing up to go to a festival in February, 1885."

Isaac Varnes says: "I saw defendant with a watch like this

last Christmas week on the Alafia. Defendant took out the watch and told me the time of day."

C. L. Ayres says: " I am a practical jeweler and watch-maker. Had twenty years experience." After examining the watch he said " this is not a gold watch. There is a thin piece of gold inside and outside of the outside cases and filled in with some baser metal. It is called a filled case. It might be called a gold watch by any one not knowing better. It is not known as a gold watch by the trade, but is known by the people generally as a gold watch."

Leonard Holloman testified that he saw defendant with a watch like.it on 24th December last.

Mrs. Eliza Glover, mother of the defendant, says she saw the watch in defendant's possession Christmas Eve. She kept the watch three weeks.

Lizzie Harris says : Has seen Glover with a gold watch on Christmas Eve, 1884.

Jane Miller re-introduced : " Had the watch about three months. Had the watch in April."

William Glover (father of the defendant) shown the watch, said it was the watch his son had Christmas day. Said it was not necessary to look at the watch to identify it. On the cross examination he was shown a different watch and identified it as the watch alleged to have been stolen, and which had been proved in evidence ; saying he had no need to look at the watch to know it. His son brought home with him a gold watch in Christmas, 1884.

It was agreed that Mrs. E. G. Tyner, if present, would swear: " That on the evening of the 26th day of December, 1884, she saw at her house in Plant City, in the county of Hillsborough, State of Florida, the defendant, James Glo-

ver, wearing a hunting case gold watch. That she noticed it particularly because she wondered at the negro's wearing it."

C. L. Ayres, recalled, says the watch is not worth exceeding eighteen dollars, but that the selling price of such a watch now is about thirty dollars.

This closed the evidence, and upon a careful examination of it we cannot see how the jury could fail to have rendered the verdict they did.

The loss of the watch is proven beyond doubt. It was found in the possession of Jane Miller who received it from Glover. He does not deny that he loaned it to her, but insists that he purchased it at Cedar Key, and subsequently at Key West. He told Jane Miller, when he loaned it to her, that he got it at Key West; he tells Burts first that he bought it at Cedar Key and then at Key West, and finally, correcting himself, insists that he bought it at Cedar Key. The watch is identified by two unimpeached witnesses, Burts, who identifies it by a broken spring, and second by Brown, who not only identifies it by its appearance, but also by the number which was on the watch in the same place and position as on the stolen watch. Burts testified it was stolen from the first to the tenth of May of 1884. Jane Miller testified: "I think the watch was taken from me about August," and that she had it in her possession about three months. Burts says that he discovered the watch on her about the first of September. From the tenth of May to the tenth of August would make the three months, but she testifies she had seen Glover with it less than a month before he gave it to her, so that it was probably discovered on her about the first of September. The defence rely on Daffin's evidence, who could not identify the watch, and who was a witness for the State. None of the defendant's witnesses identify the watch by any mark.

They saw defendant have a gold watch like the one said to have been stolen on several occasions, and some of them say it was before this one is alleged to have been stolen. All this evidence was duly considered by the jury, and they passed, as was their duty to do, upon the credibility of the witness and the weight of the evidence, and settled it by their verdict. This verdict the court refused to set aside upon the motion for a new trial. Sherman vs. The State, 17 Fla., 888 ; Tilly vs. The State, 21 Fla., 242.

The fifth error assigned is that the court charged the jury that the watch need not be wholly gold. That if it was composed partly of gold it was sufficient. The indictment charges defendant with the larceny of " one gold watch of the value of forty-five dollars." The proof was to the effect that it was made of thin plates of gold on the inside and outside of the outside cases and filled in with baser metal ; it is called a filled case by the trade, but is known by people generally as a gold watch. It was designated by the witnesses, called both by the State and defence, as a gold watch, and is recognized as nothing else in the record. The witness who testified it was a filled watch was a practical jeweler and watchmaker ; he further testified that the selling price of such a watch now is about thirty dollars.

The charge of the court upon this point was as follows : "It is not necessary that the watch should be wholly gold; if it is composed partly of gold, it is sufficient. That they must find the value of the watch, if they find one was stolen." In an indictment for larceny the article charged to have been stolen should be sufficiently described so that there may be no doubt of its identity. This is required for the protection of the accused, so that in the event of a future prosecution for the same offence there may be no doubt of the identity of the article so alleged to have been

stolen. The evidence must also substantially correspond with the description in the indictment. Such articles may be described by the name by which they are generally known, and this watch having all the outward appearance of being gold was described and known by all the parties and witnesses in this case as such, save only the jeweler who after a close and careful examination pronounced it a filled watch. It was impossible for the defendant to have been mistaken as to the article with the stealing of which he stood charged. The State vs. Clark, 8 Iredell, 226; The State vs. Campbell, 76 N. C., 261; The State vs. Sansom, 3 Brevard, 5.

Upon this point, upon the request of the State Attorney, the court further charged, " that if they believe from the evidence that the lids of the watch alleged to have been stolen are composed on each side of sheets of gold filled in with some baser metal, and that such a watch is known among the people generally as a gold watch, though not among experts, there is no variance between the allegations in the indictment, and that the watch alleged to have been stolen was a gold watch." If there was any error by reason of proper description in the charge first above cited, this covers that ground and presents the question fully and fairly to the jury under the law of the case. It was under all the evidence practically a gold watch.

The next and last error assigned is that the court erred in telling the jury that they were "the sole judges of the evidence and credibility of the witnesses, and they had a right to disbelieve any witness if they did not believe his testimony." In connection with this paragraph of the charge, the court further instructed the jury " that it is not the law that you are bound to believe every witness whose testimony is unimpeached. You are the sole judges of the evidence and the credibility of the witnesses, &c."

This fairly presented the case to the jury and we see no error in the charge. To this last alleged error there was no exception taken by defendant's counsel to the charge either at the time or on the motion for a new trial as provided by law, and therefore it ought not to be considered.

The judgment is affirmed.