WAYLAND J. PHILBRICK *vs.* WILLIAM B. KENDALL, et al.

Penobscot.    Opinion October 22, 1913.

*Breach of Contract.  Contract.  Damages.  Exceptions.  Fertilizers.*
*Implied Warranty.  Manufacturer.  Warranty.*              .

1.  Words in a contract of sale descriptive of the subject matter of the
    contract do not in strictness import a warranty and prevent the annexation
    to the contract of warranties implied by law.
2.  When a manufacturer, or dealer contracts to supply an article which he
    manufacturers or produces, or in which he deals, to be applied to a par-
    ticular purpose, so that the buyer necessarily trusts to the judgment or
    skill of the manufacturer or dealer, the law implies a promise on his part
    that the article so made and sold by him for a specific purpose, and to be
    used in a particular way, is reasonably fit and proper for the purpose to
    which it is to be applied.
3.  When a known, described and defined article is ordered of a manufac-
    turer, although it is stated to be required by the purchaser for a particular
    purpose, still if the known, defined and described thing be actually supplied,
    there is no warranty that it shall answer the particular purpose intended by
    the buyer.
4.  When a manufacturer or dealer undertakes to supply a known and
    described article manufactured by himself, or in which he deals, but which
    the vendee has not had the opportunity of inspecting, it is an implied term
    in the contract that he shall supply a merchantable article.

On motion and exceptions by the defendant.  Exceptions sus-
tained.  New trial granted.

This is an action of assumpsit to recover damages for an alleged
breach of warranty in the sale of certain fertilizer by the defendant
that it contained the necessary ingredients to make it suitable to use
to grow potatoes.  The plea is the general issue.  The jury returned
a verdict for the plaintiff for $812.50.  The defendant had various
exceptions, and filed a general motion for a new trial.

The case is stated in the opinion.

*Hudson & Hudson,* for plaintiff.

*Williamson, Burleigh & McLean, and Fletcher & Conners,* for
defendant.

SITTING: SAVAGE, C. J., KING, BIRD, HANSON, JJ.

BIRD, J.    This action is brought for the recovery of damages for breach of contract for the sale of fertilizer. The jury found for plaintiff. The case is before this court upon numerous exceptions and a general motion for new trial.

In the spring of 1909, the plaintiff, a farmer, ordered of defendants, manufacturers of fertilizers, eleven tons of fertilizer. The order was transmitted through the selling agent of the defendants, who manufactured as adapted to the growth of potatoes four fertilizers known as "4-6-10," "3-6-10," "Special Potato" and "Aroostook." They also manufactured six other brands of fertilizer, two for corn, two for grass and grain, one for general purposes and another, the purpose of which does not appear. The expression 4-6-10 indicated that the fertilizer so described, contained as chemical constituents 4 per cent ammonia, 3.29 per cent nitrogen, 6 per cent phosphoric acid and 10 per cent actual potash, together with a certain amount of filler consisting of inert substances. The plaintiff purchased of defendants a quantity of 4-6-10 fertilizer in 1907 or 1908 which he used upon the potatoes raised by him in 1908 evidently to his satisfaction. In making his purchase of 4-6-10 fertilizer to be applied to the crop of 1909, it does not appear from the record that he made any statement to the agent of defendants of the purpose for which he desired it. Plaintiff applied the fertilizer so purchased in 1909 to a field of potatoes adjoining the acreage upon which the crop of 1908 was raised. The yield was very markedly less than that of the preceding year and there was evidence tending to prove that the fertilizer purchased by plaintiff in 1909 did not contain the chemical constituents in the proportion indicated and that this defect was latent.

Among other things the jury were instructed by the Justice presiding, "I cannot give you the instruction that when a man buys a fertilizer as this plaintiff bought it in the market by name, 4-6-10 for instance, that there is no accompanying implied warranty that that fertilizer will fertilize . . . There may be an express warranty with those brands which contain the preparation of the three different elements, the tag or stamp on them, but there is also going along with them, I instruct you, an implied contract that they are

reasonably fit and suitable for the use to which they are to be put, and to which the seller knows they are to be put  .  .  .

"In this case, if you find that the defendants knew that this fertilizer was to be used for fertilizing potatoes, and that their customers throughout the State would buy it for that purpose, then it was ordered by the buyers for a special purpose known to the sellers, and if so, there is an implied warranty that it was reasonably fit and suitable for the purpose for which it was ordered or sold  .  .  .

"It is not confined to a guarantee of just such a per cent of one element, and such of another, and such of another, but there is an implied warranty that the whole mixture as a mixture is reasonably adapted to the purpose."

In support of the exceptions to these instructions, the defendants urge that there can be no implied warranty because "the words 4-6-10," by which description the goods were ordered and sold, constitute an express warranty, invoking the familiar rule that where there is an express warranty the law will imply no other warranty of the same kind, that is, that an express warranty of quality will exclude any other warranty of quality by implication.

It is undoubted law that where an express warranty of quality is made upon a sale, no other warranty touching quality will be implied: *Lombard Co.* v. *Paper Co.*, 101 Maine, 114, 120; *Deming* v. *Foster*, 42 N. H., 165, 175; *DeWitt* v. *Berry*, 134 U. S., 306, 313, 314. It is also true that words in a contract of sale descriptive of the subject matter of the contract have been held to be express warranties: *Henshaw* v. *Robins*, 9 Met., 83, 87, 88; *Edwards* v. *Marcy*, 2 Allen, 486, 489; *Borrekins* v. *Bevans*, 3 Rawle, 23, 43; see also *Morse* v. *Moore*, 83 Maine, 473, 479, 489, while other authorities hold them implied warranties; *Walcott et als.* v. *Mount*, 36 N. J. L., 262, 266; *Jones* v. *George*, 61 Tex., 345, 349; *Catchings* v. *Hacke*, 15 Mo. App., 51, 53; see also *White* v. *Miller*, 71 N. Y., 118, 129-131. Strictly, however, such words do not constitute a warranty, either express or implied. They are evidence of no undertaking collateral to a contract. They constitute the contract itself and without them there would be no contract. See *Warner* v. *Arctic Ice Co.*, 74 Maine, 475, 478; *Chanter* v. *Hopkins*, 4 M. & W., 399, 404; *Bagley* v. *Cleveland etc. Co.*, 21 Fed., 159, 162. Difference in terms can make no change in the principles of law and whether held a condition pre-

cedent or an express warranty, such words do not prevent the annexation to the contract of sale of warranties implied by law as. in the case of goods ordered of the manufacturer, without opportunity of inspection or where there is a defect in the goods not discoverable by inspection, that the described goods are merchantable. See *Hoe* v. *Sanborn,* 21 N. Y., 552, 566; *Randall* v. *Newson,* 2 Q. B. D:, 102; *Swett* v. *Shumway,* 102 Mass., 365.

The inquiry is, therefore, was there under the circumstances and terms of the contract of sale, an implied warranty of the fitness of the described article. It is also well established that where a manufacturer or dealer contracts to supply an article which he manufactures or produces, or in which he deals, to be applied to a particular purpose so that the buyer necessarily trusts to the judgment or skill of the manufacturer or dealer, the law implies a promise on his part that the article so made and sold by him for a specific purpose, and to be used in a particular way, is reasonably fit and proper for the purpose to which it is to be applied, but where a known, described and defined article is ordered of a manufacturer, although it is stated to be required by the purchaser for a particular purpose, still if the known, defined and described thing be actually supplied, there is no warranty that it shall answer the particular purpose intended by the buyer. In the latter case the purchaser relies upon his own judgment in making the selection, and not upon that of the manufacturer or dealer: *Lombard* v. *Paper Co.,* 101 Maine, 114, 120; *Seitz* v. *Brewers' Refrigerating Co.,* 141 U. S., 510, 518, 519. In the case before us there is no evidence that defendants or their agent were informed that the fertilizer bought of defendants by its descriptive name was ordered for a specific purpose and to be used in a particular way. See *West End Mfg: Co.* v. *Warren Co.,* 198 Mass., 320, 325.

But there is a further familiar rule of law that where a manufacturer or dealer undertakes to supply a known and described article manufactured by himself or in which he deals, but which the vendee has not had the opportunity of inspecting, it is an implied term in the contract that he shall supply a merchantable article. That is, not only must the goods answer the specific description but they must also be salable or marketable under that description. *Warner* v. *Arctic Ice Co.,* (Symonds, J.) 74 Maine, 475, 478, 479: And in this case the court cites with approval "The fundamental under-

taking is, that the article offered or delivered shall answer the description of it contained in the contract. That rule comprises all the others; they are adaptations of it to particular kinds of contracts of purchase and sale. You must, therefore, first determine from the words used, or circumstances, what in or according to the contract is the real mercantile or business description of the thing which is the subject matter of the bargain of purchase and sale, or, in other words, the contract. If that subject matter be merely the commercial article or commodity, the undertaking is that the thing offered or delivered shall answer that description, that is to say, shall be that article or commodity, salable or merchantable: *Randall* v. *Newson,* 20 B. Div., 102." "There being no stipulation in the contract that the goods were to be of the first quality, the law does not imply a warranty that they should be of the first quality, but does imply a warranty that they should be of fair merchantable quality and of good workmanship." And the court, among the definitions of merchantable enumerates "at least of medium quality or goodness," "good and sufficient in its kind," "free from any remarkable defect." *Warner* v. *Arctic Ice Co.,* ubi supra.

The court is of the opinion that the language of the instructions excepted to may have been susceptible of an understanding of the law by the jury not conformable to established principles in that the instructions were appropriate to the sale of an article for a specific purpose to be used in a particular manner, in reliance upon the judgment of the seller, rather than to a sale by the manufacturer of a known and described article by name, as in the present case. See *Walker* v. *Pue,* 57 Md., 155, 167; *Rasin* v. *Conley,* 58 Md., 59, 65, 66.

The rule of damages, whether the breach of contract shown be a failure to furnish goods reasonably fit for a specific purpose, or to deliver goods of a certain description, no opportunity for effective inspection being afforded, or to perform a contract of carriage as in *Hadley* v. *Baxendale,* 9 Ex., 341, is that adopted and recognized by this court, namely, that the damages "should be such as may fairly be considered either arising naturally, i. e. according to the usual course of things from such breach of contract itself, or such as may be reasonably supposed to have been in the contemplation of both parties at the time they made the contract, as the probable result of

the breach of it." *Lumber Co.* v. *Bradstreet,* 97 Maine, 165, 174;
*Milford* v. *B. R. & E. Co.,* 104 Maine, 233, 241, 242; 106 Maine,
316, 325; *Leavitt* v. *Fiberloid Co.,* 196 Mass., 440, 445-6; *Dushane*
v. *Benedict,* 120 U. S., 630, 636, 637. See *Hammond* v. *Bussey,* 20
Q. B. Div., 70, 88; *Leonard* v. *Telegraph Co.,* 41 N. Y., 544, 566-7.
This is substantially the rule of damages given. There was evi-
dence tending to prove, or from which the jury might infer, that
the fertilizer sold to plaintiff was part of a lot in the manufacture
of which some of the active chemical constituents used had been
subjected to the action of fire and water and that by reason of
their use the fertilizer did not contain these constituents in sub-
stantially the proportions required and also that a fertilizer so con-
stituted would not only not be as effective as that made by formula
but might be injurious to potato plants. It is clear that there was
evidence from which the jury might find that it was in the contem-
plation of both parties to the contract that the fertilizer purchased
would be used in raising potatoes. If so found and if the known,
defined and described fertilizer was not actually supplied as ordered,
or was not merchantable as before defined, the damages recoverable
are the difference in value between the crop actually raised and the
crop that might have been raised had there been compliance with the
contract.

As the exceptions first considered are sustained, it is unnecessary
to consider the other exceptions or the motion.

*Exceptions sustained.*
*New trial granted*