R. L. EATON AND G. C. McCALL AS ADMINISTRATORS OF THE ESTATE OF WILLIAM M. GIRARDEAU, DECEASED, *Plaintiffs in Error,* v. GEORGE W. HOPKINS AND MATTIE C. COLLINS, *Defendants in Error.*

Opinion filed May 18, 1916.

1. Where a single assignment of error attacks a ruling of the court upon a demurrer which was interposed to two or more

pleas, such an assignment will be tested by the sufficiency or insufficiency as the case might be, of any one of the pleas.

2.  ιAn action for a breach of the covenant of warranty in a deed of conveyance to two or more persons in common may be brought by any one or more of the grantees named in the deed.

3.  A charge technically erroneous upon the burden of proof becomes harmless if the undisputed evidence is sufficient to establish the point upon which the court erroneously charged concerning the burden of proof.

4.  In an action by one or more grantees in common for a breach of the covenant of warranty, the plaintiffs may recover only so far as their own interests extend.

5.  In an action for a breach of the covenant of warranty, where the vendor conveys the property a second time under circumstances that would charge him with knowledge of the fact that he had previously conveyed the property, and the latter purchaser takes the paramount title by being the first to comply with the recording laws, the measure of damages to be applied is compensation for the actual injury sustained, or "damages for the loss of the bargain," including costs and expenses incident to a defense of the title.

Writ of Error to Circuit Court, Madison County; M. F. Horne, Judge.

Judgment reversed.

*T. L. Clarke,* for Plaintiffs in Error;

*Wm. T. Hendry,* for Defendants in Error.

ELLIS, J.—On the 25th of October, 1902, William M. Girardeau and his wife conveyed to George W. Hopkins, Mattie C. Collins and Charles Marthinson, one hundred and twenty acres of land in Taylor county. The

consideration expressed was six hundred dollars.   The interests conveyed were an undivided one-fourth to Charles Marthinson, the same quantity to George W. Hopkins and an undivided one-half interest to Mattie C. Collins.   The deed contains a covenant of general warranty.   .

On September 28th, 1904, William Girardeau and his wife conveyed the same land to William O'Brien, and as the grantees in the first deed of conveyance had not caused their deed to be recorded, the Circuit Court in August, 1908, in a suit brought by George Hopkins and Mattie Collins against William O'Brien to cancel the latter deed as a cloud upon the title, decreed that O'Brien was a bona fide purchaser of the land for a valuable consideration and without notice of the title of Hopkins and Mattie Collins and dismissed the bill.   William Girardeau was given due notice of the suit and made a party defendant.

On September 4th, 1909, William Girardeau died testate, naming two executors of his will, one of whom died, and the other, Mary Girardeau, widow of deceased, was removed, and in October, 1910, the two defendants, R. L. Eaton and G. C. McCall, were granted letters of administration upon William Girardeau's estate *de bonis non cum testimento annexo*.

Before the death of William Girardeau and prior to the institution against O'Brien of the suit to remove the cloud upon plaintiff's title, they and Charles Marthinson brought an action at law against William Girardeau in 1906 to recover the purchase money paid by William O'Brien to William Girardeau "based upon Girardeau's warranty deed," for money had and received by Girardeau for the use of the plaintiffs.   That suit was dismissed.

R. L. Eaton is the son-in-law of Mrs. Mary Girardeau, widow of the deceased, and at one time one of the executors of her deceased husband's will. She was removed from that position largely through the activity of Mr. Eaton, who with Mr. McCall, as stated, was appointed administrator. During Mrs. Girardeau's executorship the plaintiffs through their attorney, Mr. S. D. Clarke, on September 8th, 1910, wrote Mr. Eaton giving full information as to the history and nature of the plaintiffs' claim against the estate of William Girardeau, and requested him to "take up the matter" as Mr. Clarke supposed Mrs. Girardeau would be guided largely by Mr. Eaton's views. In reply to this letter Mr. Eaton wrote upon the margin directing Mr. Clarke to take the matter up with Mrs. Girardeau, and saying that if she said anything to him about it he would advise her to pay it. After Mr. Eaton's appointment as administrator, Mr. Clarke again wrote him referring to the letter of September 8, 1910, and requesting Mr. Eaton to close the matter at once. The last letter followed the first in about eight months. Mr. William T. Hendry, attorney for the plaintiff, early in the year 1914 applied to Mr. Eaton for a settlement, and tried to get him to give Mr. Hendry an "acknowledgment of the account for one thousand dollars," but Eaton refused to do so, and offered to pay six hundred dollars in settlement.

On October 8th, 1909, Mrs. Mary Girardeau and T. M. Puleston, the then executrix and executor of the will of William M. Girardeau, caused to be published in a newspaper published in Monticello the notice to creditors of the estate, required by statute. The notice was published for eight weeks and proof of the publication made in October, 1914.

The plaintiffs commenced this action of covenant

upon the warranty contained in the Girardeau deed of 1902 in the month of May, 1914, in the Circuit Court for Madison County. The defendants R. L. Eaton and G. C. McCall, as administrators, pleaded, first, that the covenants were made to plaintiffs and Charles Marthinson jointly, that neither he nor his personal representatives were made parties plaintiff, "and the plaintiffs are not entitled to claim or recover for any moneys paid by said Charles Marthinson for the purchase of the lands mentioned in plaintiff's declaration;" second, that plaintiffs had made an election of remedies and were estopped by their action at law commenced in 1906 in assumpsit for money had and received, from suing the defendants in covenant upon the warranty contained in the deed of 1902, and, third, that the claim of the plaintiffs was barred by the statute of· non-claim.

The plaintiffs demurred to the first and second pleas, and joined issue upon the third. The demurrer was sustained, and the parties went to trial upon the issue joined upon the third plea. By stipulation between the attorneys representing the plaintiffs and defendants a jury was waived and the cause was tried by the judge without a jury. The court found that Girardeau committed a breach of the warranty contained in the deed of 1902 when he sold in September, 1904, the same lands to O'Brien, an innocent purchaser, and from that date became indebted to the plaintiffs in the sum of six hundred dollars; that prior to the institution of this suit Charles Marthinson died, and the right of action survived to the surviving joint "warrantees;" that the plaintiffs' claim was duly presented to the administrators of the estate of William M. Girardeau within two years from the publication of the notice to creditors under the statute of non-claim, and entered judgment for the plaintiffs

against the defendants in the sum of one thousand and ninety-eight and 50-000 dollars, principal and interest. The defendants took a writ of error to that judgment, and assign six errors, as follows: First, sustaining the demurrer to the first and second pleas; second, in holding that under the third plea the burden of proof was upon defendants to show that the claim was not presented to the executors of administrators within the period required by the statute; third, the finding for plaintiffs; fourth, the holding by the court that the right of action upon the death of Marthinson survived to the plaintiffs; fifth, allowing interest upon the plaintiffs claim "from the date of the purchase of said lands on the purchase price or any part thereof," and, sixth, overruling the motion for a new trial.

The plaintiffs in error in one assignment attack the order of the court sustaining the demurrer to the first and second pleas. If, therefore, one of the pleas was bad, the assignment must fail. Each error relied upon should be strictly specified and separately assigned. The rule that when one assignment was made attacking several distinct instructions this court would go no further than to ascertain if the court below acted properly in giving one of the instructions, has long been recognized in this State, and was definitely applied to the rulings on pleadings in the case of Daniel & Finley v. Siegel-Cooper Co., 54 Fla. 265, 44 South. Rep. 949. The rule obtains in this State as to the admission or rejection of evidence, the giving or refusing of instructions and the striking or refusing to strike different pleas. There is no reason so far as we are able to perceive why the rule should not also apply to instances where one assignment attacks an order sustaining or overruling a demurrer to several pleas. McMillan v. Warren, 59 Fla. 578. 52 South. Rep.

825.  The first plea was bad.  In the first place it did not go to the entire declaration.  It may be construed to admit the plaintiffs' right to maintain the action, but not for the entire sum paid by all three grantees in the deed of 1902.  Whether it may be so construed, the plea was bad because the covenants in the deed of 1902 by which the grantees became tenants in common were several, the interests were several, their freeholds were several, therefore the action upon the breach was several.  Lamb v. Danforth, 59 Me. 322; Lahy v. Holland, 8 Gill (Md.) 445, 50 Am. Dec. 705; 7 R. C. L. 1193; Swett v. Patrick, 11 Me. 179; Midgley v. Lovelace, Carthew 289, 90 English Reports, reprint.  We think the second plea was also bad because neither the action in assumpsit nor the one in covenant could be maintained unless the plaintiffs admitted the breach of warranty by the grantor.  Each case rests upon the theory that the grantor conveyed a good title to O'Brien.  The actions therefore were not inconsistent.

As to the burden of proof on the presentation of the claim the error if any was harmless because the evidence showed sufficient knowledge on the part of one of the administrators as to the nature and character of the claim, brought to his attention within two years from the publication of the notice by an attorney for the plaintiffs.  See 11 R. C. L. pp. 192-194.

The court erred however in the finding  as to the amount the plaintiffs should recover from the defendants.  The evidence showed their interest to be three-fourths, and that of Marthinson to be one-fourth.  The plaintiffs may recover for the breach only so far as their own interests extend.  Lahy v. Holland, supra.

The measure of damages for a breach of a covenant of warranty according to Devlin on Deeds, is the consid-

eration paid for the land, or what it was worth as determined by the parties with interest for the time the purchaser has lost the mesne profits, also the costs and expenses incurred by the covenantee in defending the suit to evict him., 2 Devlin on Deeds, §934. Where, however, the vendor conveys the property a second time under circumstances that would charge him with knowledge of the fact that he previously conveyed the property and the latter purchaser places his deed of record prior to the recording of the first conveyance and thereby takes the paramount title and right of possession and the first vendee is evicted and sues his vendor for damages for breach of the covenant of warranty and quiet possession, the measure of damages to be adopted, as we view the law, is the same as in cases where the vendor has contracted and agreed to convey and thereafter having good title and right to convey declines and refuses to do so. In which case the measure of damages to be applied is that of adequate compensation for the actual injury sustained, or "damages for the loss of the bargain." Madden v. Caldwell Land Co., 16 Idaho 59, 100 Pac. Rep. 358, 21 L. R. A. (N. S.) 332; 7 R. C. L. p. 1166; Munson v. McGregor, 49 Wash. 276, 94 Pac. Rep. 1085.

In Johnson v. McMullin, 3 Wyo. 237, 21 Pac. Rep. 701, 4 L. R. A. 670, it was held that where the vendor sells the property to a third person and thereby puts it out of his power to perform, the measure of damages to which a vendee in a contract of purchase is entitled, is the value of the property at the time the deed ought to have been delivered, less the amount of the purchase money due, citing Hopkins v. Lee, 19 U. S. 6 Wheat. 109, (5 L. Ed.) 218; Gibbs v. Champion, 3 Ohio 335. See Vallentyne v. Immigration Land Co., 95 Minn. 195, 103 N. W. Rep. 1028; Cade v. Brown, 1 Wash. 401, 25

Pac. Rep. 457; Burdick v. Seymour, 39 Iowa 452; 2 Warvelle on Vend. & Pur. §936; 2 Sutherland on Damages, §579; Matheny v. Stewart, 108 Mo. 73, 17 S. W. Rep. 1014; Arentsen v. Moreland, 122 Wis. 167, 99 N. W. Rep. 790, 65 L. R. A. 973.

In Munson v. McGregor, *supra,* the vendee was allowed to recover the difference between the two prices together with the amount paid upon the purchase price, with interest from the commencement of the suit. Practically the same rule was recognized in Bartlett v. Smith, 146 Mich. 188, 109 N. W. Rep. 260, where the vendee was allowed to recover the value of the improvements made in good faith by him, together with the payments made, less the value of the use of the premises.

The rule is very generally recognized that in such cases the good faith of the vendor cannot be used by him in mitigation of damages. See Doherty v. Dolan, 65 Me. 87. Whether the vendor is actuated by bad faith in refusing to convey the land in one case or carelessly or in bad faith conveys the land a second time thereby defeating the first conveyance which was not placed of record, the results to the vendee are the same. The vendor cannot urge a defense which starts with his own violation of the rights of his grantee, as was said by the Supreme Court of Maine in Williamson v. Williamson, 71 Me. 442. See 2 Sutherland on Damages (2nd ed.) p. 213; Matheny v. Stewart, *supra;* Hammond v. Hannin, 21 Mich. 374; Fleckten v. Spicer, 63 Minn. 454, 65 N. W. Rep. 926.

There is undoubtedly a diversity of opinion among the courts and text writers as to the correct measure of damages in cases of this kind. We think that the case is more analogous to those in which the vendor having at the time of the contract a good title and right to convey

afterwards refuses to make the conveyance, than to those cases where after conveyance the vendee through no act of the vendor is ousted of the possession and title by a superior right. In the latter case the authorities are in general harmony on the proposition that the vendee in an action of covenant against the vendor on the breach of warranty may recover the money paid on the purchase price, but differ as to the date from which interest should be allowed, some holding that interest should be computed from the date of the deed, and others from the date of eviction. Upon this point we express now no opinion, but hold that in a case of this kind the measure of damages is adequate compensation for the actual injury, or as sometimes expressed "damages for the loss of the bargain," which should include the costs and expenses incident to a defense of his title. The court erred in entering judgment in favor of the plaintiffs for the full amount of the purchase price and interest which was greater than the three-fourths interest represented by them. For this reason the judgment is reversed.

TAYLOR, C. J., and SHACKLEFORD, COCKRELL and WHITFIELD, JJ., concur.