E. BERGER, *Plaintiff in Error*, v. E. BERGER & COMPANY, A CORPORATION, *Defendant in Error*.

Opinion Filed December 2, 1918.

Petition for Rehearing Denied December 20, 1918.

1  It is the duty of the appellant or the plaintiff in error to clearly and distinctly specify and separately assign each error which it is contended was committed and upon which reliance is placed for a reversal.

2. An assignment of error based upon an order overruling a demurrer to a declaration as a whole which contains more

than one count is not well taken if it attacks the order in its entirety and the declaration contains one good count.

3. In an action for breach of a contract the amount claimed as damages in the declaration is not the subject of demurrer.

4. During the trial of a case when a question is excluded upon objection, and the question does not indicate of itself whether the answer thereto will be material or pertinent evidence, the party propounding the question, if he intends to have the ruling reviewed, should make an offer at the trial of what he proposes to prove by such question. If he does not, neither the trial nor the Appellate Court can determine whether the proposed evidence is material or not.

5. Where a person contracts to supply an article in which he deals for a particular purpose knowing the purpose for which he supplies it, and that the purchaser has no opportunity to inspect the article, but relies upon the judgment of the seller as to its suitableness or fitness for the purpose desired, there is an implied condition that the article is fit for the purpose to which it is to be applied.

Writ of Error to Circuit Court for Hillsborough County; F. M. Robles, Judge.

Judgment affirmed.

*E. B. Drumright,* for Plaintiff in Error;

*J. T. Watson, Jr.,* for Defendant in Error.

ELLIS, J.—The defendant in error, hereinafter referred to as the plaintiff, brought an action in the Circuit Court for Hillsborough County against E. Berger, who is plain-

tiff in error here. The first count of the amended declaration alleges that the defendant in January, 1907, sold to the plaintiff a lot of lumber that was supposed to contain 175,000 feet at the price of $17.082 per thousand feet; that it was agreed between them that when the lumber was checked up if there should be a shortage in the quantity paid for that the defendant would make good the amount of shortage, and if, upon the other hand, there should be an "overage" the plaintiff would pay the defendant therefor; that the plaintiff paid the defendant for 171,133 feet of lumber at the agreed price, but when the lumber was checked up the lot was found to contain only 149,442 feet; that the shortage thus shown amounted to $370.52 at the agreed price per thousand feet, and the defendant has not paid the same to the plaintiff and refuses to pay it.

The second count alleges that the purchase of the lot of lumber by the plaintiff was for the purpose of reselling the same under a contract which it had made with another corporation, which contract required that the lumber should meet and comply with certain requirements as to quality and specifications and that the lumber was piled in such manner that the plaintiff did not have an opportunity to inspect it when the purchase was made from the defendant, who sold it to the plaintiff for the purpose of the resale under the contract between the plaintiff and the other corporation; that the defendant knew the requirements of that contract as to quality and specifications of the lumber to be sold, knew all the terms of the contract and that the plaintiff would not have an opportunity to inspect the lumber before selling it to the corporation; that in buying the lumber for the purpose stated the plaintiff relied upon the defendant's knowledge of the contract mentioned and his judg-

ment and good faith in selling to the plaintiff for the purpose aforesaid, that the defendant knew when he sold the lumber to plaintiff that the latter was relying upon his judgment and good faith "to furnish only a suitable and merchantable quality of lumber for the purpose of filling the contract." It is alleged that the purchasing corporation rejected 84,833 feet of the lumber because so much of it "did not meet the requirements and specifications under the contract for its sale," etc., wherefore the plaintiff lost $1449.11, and incurred an expense of $1041.67 in taking care of and preserving the lumber, which it afterward sold for $10.60 per thousand feet the "best advantage possible," and realized upon such sale $899.23, leaving an amount due by the defendant to the plaintiff upon the implied warranty of $1961.97, but which the defendant refused to pay.

The third count of the amended declaration alleged that as between the plaintiff and the defendant there was an express agreement that the lumber was fit and suitable for the purpose of filling the plaintiff's contract, and that if any portion of the lumber should be rejected by the prospective purchaser corporation on account of its failure to come up to the requirements, that the defendant would make good to the plaintiff all such rejections. It alleged that the defendant refused to make good to the plaintiff the lumber rejected and refused to pay the plaintiff the loss ustained.

There were also six other counts grouped in the second paragraph of the original declaration under the title second count. These counts were for goods bargained and sold; work done and materials furnished; money had and received; money loaned by plaintiff to defendant; money paid and expended by the plaintiff for the use of the defendant and account stated.

Issue was joined upon these common law counts, and the defendant demurred to the first, second and third counts of the amended declaration. The demurrer was overruled and such ruling is assigned as the first error.

The rule which obtains in this State in appellate practice reuqires that the party seeking relief in the appellate court in preparing the assignment of errors should clearly and distinctly specify and separately assign each error, which it is contended was committed. In Eaton v. Hopkins, 71 Fla. 615, 71 South. Rep. 922, we held that a single assignment of error which attacks a ruling of the court upon a demurrer, which was interposed to two or more pleas would be tested by the sufficiency or insufficiency as the case might be of any one of the pleas. In the case at bar the demurrer attacks separately the three counts of the declaration and the ruling upon the demurrer is assigned as error. In this one assignment, therefore, is embraced three rulings, because in overruling the demurrer the court held that it was not good as to either count. The plaintiff should point out specifically which count was bad and confine his attack to that count, but instead of that he says by the assignment, neither count was good. And as the burden is upon him to make the error to appear he fails if either count was good. If either count properly stated a cause of action and the evidence supported it, the error if any in not sustaining a demurrer to supposedly defective counts would be harmless unless it was made to appear that the defective count embarrassed or prejudiced the defendant in the trial of the cause, or that by reason of it some right of his was substantially affected. This reasoning has been applied by this court in cases where pleas were attacked by demurrers, and we can perceive no reason for not applying the rule in cases where declarations containing several counts

are attacked by demurrers. See Walter v. Florida Savings Bank, 20 Fla. 826; Parkhurst v. Stone, 36 Fla. 456, 18 South. Rep. 594; Williams Co. v. Pensacola, St. A. & G. S. S. Co., 57 Fla. 237, 48 South. Rep. 630; McDougald v. Bass, 53 Fla. 142, 43 South. Rep. 778; McCallum v. Driggs, 35 Fla. 277, 17 South. Rep. 407; Jacksonville, T. & K. W. Ry. Co. v. Griffin, 33 Fla. 602, 15 South. Rep. 336.

The first count of the declaration clearly states a cause of action based upon an express agreement that if the lumber checked short the defendant would pay the shortage. The third count was based upon an express agreement that the lumber sold by the defendant to the plaintiff would come up to and meet the requirements of the plaintiff's contract with the corporation who was to become the purchaser from the plaintiff, and if any part of it failed to do so, the defendant would "make good to the plaintiff for all rejections." It is true that much unnecessary matter was contained in the count which rendered it needlessly wordy, but the elements of a valid contract are sufficiently alleged in it. It was contended in behalf of the defendant that the third count was vague and uncertain, that the declaration did not show "that as a matter of law" the defendant warranted the quantity or quality of the timber; that it did not appear that the contract was in writing; that damages claimed were too remote and that the declaration did not show that the defendant had any greater knowledge of the quality of the lumber than the plaintiff, nor that the defendant was called upon to make good under his warranty by substituting other lumber in place of that found unfit. These grounds, we think, are untenable. The count is not bad for uncertainty nor vagueness. The contract was not required to be in writing, and the allegation was clearly made that the defendant warranted and agreed that 'all

the lumber "would come up to and meet the requirements of the plaintiff's contract," and that the defendant would make good to the plaintiff for all rejections based upon failure to come up to the specifications.

The third count of the declaration rests upon an express agreement between the plaintiff and the defendant. It is not a question of implied obligations and warranties. As to the measure of damages or the amount claimed, that is not the subject of demurrer. See Tillis v. Liverpool & L. & G. Ins. Co., 46 Fla. 268, 35 South. Rep. 171; Cline v. Water Works Co., 46 Fla. 459, 35 South. Rep. 8.

The eighth assignment of error is the one next discussed. The defendant being sworn as a witness in his own behalf was asked the following question by his own counsel: "The controversy and principle in this suit is the question of some lumber, I wish you would state how you came to purchase the lumber in the first instance; to make it more specific if it was in connection with this exhibit which is shown in connection with this case, being an order of May 28th, 1906." The plaintiff objected to the question upon the grounds that it was "immaterial and irrelevant." The objection was sustained. The ruling is assigned as error. In view of the issues being tried it is very difficult to understand just what was the object of the question. The record does not disclose what counsel proposed to show by the witness and the question is not self-explanatory. So far as we are able to perceive, the reasons which may have been entertained by the defendant for buying the lumber, or the circumstances under which he became the owner had no bearing whatever upon the issues which were in effect that he had not promised as alleged in the special counts and never was indebted as alleged in the common counts, and an issue upon a plea of set-off. The question may have been in-

tended to elicit some facts bearing upon the plea of set-off, but if so it is not made to appear that such was its purpose. See Boykin v. State, 40 Fla. 484, 24 South. Rep. 141; Starke v. State, 49 Fla. 41, 37 South. Rep. 850; Hoodless v. Jernigan, 46 Fla. 213, 35 South. Rep. 656; Kelly v. State, 55 Fla. 51, 45 South. Rep. 990.

The ninth assignment of error cannot be sustained for the same reason.

The twelfth, thirteenth, fourteenth and fifteenth assignments of error are based upon certain instructions given by the court numbered one, two, three and four. The first charge contains merely a statement of the plaintiff's case as made by the declaration, the second charge is a correct definition of the meaning of the phrase, "preponderance of the evidence." Without deciding the question of whether a jury may arbitrarily reject testimony of an unimpeached witness as untrue, we do hold that the jury are the judges of the weight of the evidence and the credibility of the witnesses. See Roberson v. State, 40 Fla. 509, 24 South. Rep. 474; Lester v. State, 37 Fla. 382, 20 South. Rep. 232; Glover v. State, 22 Fla. 493. In the latter case a charge "that it is not the law that the jury is bound to believe every witness whose testimony is unimpeached," was upheld. See Atlantic Coast Line R. Co. v. Beazley, 54 Fla. 311, 45 South. Rep. 761. There is nothing, however, in the instruction that negatives the idea that the jury should reconcile whatever conflicting statements might have been made by the witnesses if possible upon the theory that the witnesses had spoken the truth, for the jury was told that it was for it to say whether all the witnesses had spoken truthfully.

The fourth and fifth instructions contain correct propositions of law applicable to the evidence upon the subject of an implied warranty. There was ample evidence

from which the jury might reasonably infer an agreement between the plaintiff and the defendant that the lumber sold by the latter should measure up to the specifications of a contract of purchase between the plaintiff and the other corporation with the terms of which contract the defendant was familiar. There was evidence sufficient to support the second count of the declaration which was based upon the implied warranty.

The plaintiff in error contends that under the circumstances of the case there would be no implied warranty or condition that the lumber would measure up to any specifications except quantity. We do not agree with him in this contention. It appears that the defendant as president of the corporation plaintiff knew of the contract for the purchase of the lumber, what its terms were and what its requirements were as to equality and specifications of the lumber to be delivered, that he sold to his company the lumber mentioned for the purpose of filling the particular contract, that there was at the time of the purchase no opportunity for inspection by the plaintiff who relied upon the defendant's judgment as to suitableness of the lumber for the purpose of filling the contract with the other corporation. The purpose for which the lumber was purchased by the plaintiff from the defendant admits of no dispute. At least the evidence fully warrants the jury's finding on that point; the purchaser had a right to expect a lot of lumber that would meet the specifications of the contract which it held with the other corporation, of the terms of which the defendant was fully cognizant and to fill which he sold the lumber to the plaintiff. There was evidence to show that when the sale was made the plaintiff did not have an opportunity to examine the lumber. The maxim of *caveat emptor* did not, therefore, apply. See Bunch v. Will, 72 Ark. 343, 80

S. W. Rep. 582, 65 L. R. A. 80; 35 Cyc. 399.   It is contended that the defendant was not a dealer or manufacturer of lumber, and although he may have known that the lumber was purchased for resale, no implied warranty or condition exists that it was suitable for resale under the particular contract of sale with the third party. But the case made by the declaration and supported by the evidence in this instance is one where an article was not bought for "the trade" generally, but for a specific purpose known to the defendant who was a dealer, and sold by him to the plaintiff for that particular purpose, who without having an opportunity to inspect the article sold relied upon the defendant's judgment that the same was suitable for the purpose especially designed.

The principle according to which the law will imply a condition has been stated in the following words, which Mr. BENJAMIN says has become classical: "An implied warranty, or as it is called, a covenant in law as distinguished from an express contract or express warranty really is in all cases founded on the presumed intention of the parties and upon reason. The implication which the law draws from what must obviously have been the intention of the parties the law draws with the object of giving efficacy to the transaction and preventing such a failure of consideration as cannot have been within the contemplation of either side. In business transactions what the law desires to effect by the implication is to give such business efficacy to the transaction as must have been intended at all events by both parties, who are business men; not to impose on one side all the perils of the transaction or to emancipate one side from all the chances of failure, but to make each party promise in law as much, at all events as it must have been in the contemplation of both parties that he should be responsi-

ble for in respect of those perils or chances." Benjamin on Sales (5th ed.) 595. The contract appears not to have been in writing, the lumber was not described as being of a certain quality or of specific dimensions, but was bought in a pile to be afterwards checked up and for the purpose of filling a certain contract with a third person the terms of which, the quality and character of lumber required by it were well known to the defendant who knew at the time of the sale that the purchaser through its other officers with whom the defendant dealt had no opportunity to inspect it, but relied upon the defendant's knowledge and judgment that the lumber was fit for the purpose intended. We think the rule is well established which embodies the principle above quoted that where a person contracts to supply an article in which he deals for a particular purpose, knowing the purpose for which he supplies it, and that the purchaser has no opportunity to inspect the article, but relied upon the judgment of the seller, there is an implied condition or warranty as it is called, that the article is fit for the purpose to which it is to be applied. See Omaha Coal, Coke & Lime Co. v. Fay, 37 Neb. 68, 55 N. W. Rep. 211; West End Mfg. Co. v. P. R. Warren Co., 198 Mass. 320, 84 N. E. Rep. 488; Philbrick v. Kendall, 111 Me. 198, 88 Atl. Rep. 540; Antrim Lumber Co. v. Daly, Mo. App. , 190 S. W. Rep. 971; Gerst v. Jones & Co., 32 Gratt. (Va.) 518.

Under the circumstances of this case, it appearing from the evidence that the lumber was so located or piled, or for some other reason the plaintiff had no opportunity to examine or inspect it, but was compelled to rely upon the defendant's knowledge and judgment as to its suitableness for the particular contract of sale with the terms of which he was fully acquainted, we think that an im-

plied condition that it was fit for the purpose intended existed, and the verdict was supported by the evidence.

There was no error in overruling the motion for a new trial nor the motion in arrest of judgment.

The judgment is therefore affirmed.

BROWNE, C. J., AND TAYLOR, WHITFIELD AND WEST, J. J., concur.